**MONTANA AIR CHAPTER NO. 29, ASSOCIATION OF CIVILIAN TECHNICIANS, INC., Plaintiff–Appellant,**

v.

**FEDERAL LABOR RELATIONS AUTHORITY, et al., Defendants–Appellees.**

No. 88–4139.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 5, 1989.

Decided March 22, 1990.

Daniel M. Schember, Gaffney, Schember & Kete, P.C., Washington, D.C., and D. Patrick McKittrick, McKittrick Law Firm, Great Falls, Mont., for plaintiff-appellant.

Denise Morelli, Federal Labor Relations Authority, Washington, D.C., for defendants-appellees.

Before NELSON, BOOCHEVER and TROTT, Circuit Judges.

BOOCHEVER, Circuit Judge:

Montana Air Chapter No. 29, Association of Civilian Technicians, Inc. (the union), appeals from the district court's grant of summary judgment in favor of the Federal Labor Relations Authority (FLRA). The union had filed suit challenging the decision of the FLRA's General Counsel not to issue an unfair labor practice complaint. The union's unfair labor practice charge arose in connection with the National Guard Bureau's refusal to approve Article 23 of a collective bargaining agreement, which allowed civilian technicians employed by the National Guard to wear approved civilian attire rather than military dress when performing their civilian duties. We agree with the district court that decisions by the General Counsel not to issue an unfair labor practice complaint are presumptively unreviewable. The presumption, however, may be overcome if the refusal is based solely upon the erroneous belief that the agency lacks jurisdiction, or upon adoption of a general policy so extreme as to amount to an abdication of the agency's statutory responsibilities. We find that the General Counsel promulgated statutory and regulatory interpretations in

the course of his decision which strongly indicate that he believed he had no authority to issue a complaint. We conclude that the General Counsel's interpretations are impermissible and remand for consideration under appropriate standards of the union's request to file an unfair labor practice complaint.

## FACTS AND PROCEDURAL HISTORY

The facts and procedural history underlying this appeal are not in dispute. The union is the collective bargaining representative for civilian technicians employed by the Montana Air National Guard. The Adjutant General of the Guard in each state hires and supervises these civilian technicians, who are employed as mechanics, machinists, and supply technicians. The civilian technicians must be members of the Guard, but they have federal civilian employee status. In March 1981, the union and the Adjutant General of the Montana Air National Guard entered into a collective bargaining agreement concerning conditions of employment for civilian technicians. Article 23 of that labor agreement granted civilian technicians the right to wear approved civilian attire while performing civilian duties. In April 1981, the National Guard Bureau approved the agreement pursuant to 5 U.S.C. § 7114(c).

In April 1985, the union and the Adjutant General executed a new labor agreement. This agreement contained an Article 23 substantially similar to that contained in the 1981 agreement. In May 1985, however, the National Guard Bureau disapproved Article 23 of the 1985 agreement on the ground the provision violates 5 U.S.C. § 7106(a), which provides that the federal law governing collective bargaining of federal civilian employees does not diminish the authority of the Guard to determine its own internal security practices.

The Labor–Management Relations Chapter, 5 U.S.C. §§ 7101 *et seq.* (1988), provides two avenues for challenging a negotiability determination, *i.e.*, an agency's decision that a proposed provision encroaches on the reserved rights of management under § 7106 which cannot lawfully be negotiat-ed. A labor organization may appeal the agency's decision through the negotiability appeal process established in § 7117(c) and 5 C.F.R. §§ 2424.1 *et seq.*, or the organization may request that the General Counsel issue an unfair labor practice complaint against the agency pursuant to § 7118 and 5 C.F.R. §§ 2423.1 *et seq.* Both procedures are available in many cases, although the organization must choose which procedure it will pursue first. 5 C.F.R. § 2423.5.

Here, the union chose to pursue only the unfair labor practice procedure. The union filed an unfair labor practice charge with the FLRA's Regional Director, challenging the National Guard Bureau's disapproval of Article 23 of the 1985 collective bargaining agreement. The Regional Director investigated the charge, determined it involved a "pure negotiability" issue, and refused to issue an unfair labor practice complaint. The union appealed the Regional Director's decision to the General Counsel. In January 1986, the General Counsel denied the union's appeal and refused to issue an unfair labor practice complaint.

Throughout the administrative review process, the Adjutant General of the Montana Air National Guard had agreed to comply with Article 23 of the 1981 labor agreement. In February 1986, after the General Counsel refused to issue an unfair labor practice complaint on behalf of the union, the Adjutant General notified the union that the matter was closed and that civilian technicians would be required to wear military attire beginning March 31, 1986. On February 28, 1986, the union asked the General Counsel to reconsider his refusal to issue an unfair labor practice complaint. The General Counsel denied that request on March 10, 1986.

The union filed suit in federal district court for the district of Montana. On April 15, 1986, the district court denied the union's motion for temporary injunctive relief from the Adjutant General's order, finding that the court lacked subject matter jurisdiction to review the General Counsel's decision not to issue an unfair labor practice complaint. 632 F.Supp. 643. The FLRA then moved to dismiss the entire complaint

on the same basis. The motion was referred to a magistrate on February 22, 1988. After considering the magistrate's findings and recommendations as well as submissions by the parties, the district court granted the FLRA's motion to dismiss (treated as a summary judgment motion) on July 13, 1988. The union appealed this judgment on August 30, 1988.

## DISCUSSION

■ The district court granted the FLRA's motion for summary judgment solely on the ground that the court lacked jurisdiction to review the agency's decision. A grant of summary judgment is reviewed de novo. *Darring v. Kincheloe*, 783 F.2d 874, 876 (9th Cir.1986). Agency action is judicially reviewable except when statutes preclude judicial review or when such action is committed to agency discretion by law. 5 U.S.C. §§ 701(a) & 702 (1988). An agency's decision not to take enforcement action generally falls under the second exception and is presumed to be immune from judicial review. *Heckler v. Chaney*, 470 U.S. 821, 832, 105 S.Ct. 1649, 1656, 84 L.Ed.2d 714 (1985). Specifically, the General Counsel's exercise of discretion not to file an unfair labor complaint generally is unreviewable. *American Fed'n of Gov't Employees Local 1749 v. Federal Labor Relations Auth.*, 842 F.2d 102 (5th Cir. 1988) (per curiam); *Turgeon v. Federal Labor Relations Auth.*, 677 F.2d 937 (D.C. Cir.1982) (per curiam). The General Counsel's decision in this case, therefore, is presumptively unreviewable.

The Supreme Court in *Chaney*, however, suggested that discretionary nonenforcement decisions may be reviewable when "a refusal by the agency to institute proceedings [is] based solely on the belief that it lacks jurisdiction" or "where it could justifiably be found that the agency has 'consciously and expressly adopted a general policy' that is so extreme as to amount to an abdication of its statutory responsibilities." 470 U.S. at 833 n. 4, 105 S.Ct. at 1656 n. 4. Similarly, the D.C. Circuit has recognized two exceptions to the general rule of unreviewability of agency nonen-

forcement decisions: 1) agency nonenforcement decisions are reviewable when they are based on a belief that the agency lacks jurisdiction, *International Longshoremen's Ass'n v. National Mediation Bd.*, 785 F.2d 1098, 1100 (D.C.Cir.1986); and 2) an agency's statutory interpretations made in the course of nonenforcement decisions are reviewable, *International Union, United Automobile, Aerospace & Agricultural Implement Workers v. Brock*, 783 F.2d 237, 245 (D.C.Cir.1986). We find the exceptions suggested by the Supreme Court in *Chaney* and by the D.C. Circuit in *Longshoremen* and *International Union* apply in the present case. The General Counsel's opinion letters strongly indicate that his decision was based solely on the belief that he did not have jurisdiction to issue an unfair labor practice complaint. We also find that the General Counsel promulgated a new interpretation of a statute and of FLRA regulations in the course of his decision.

I. Exception for a Decision Based on Jurisdiction

■ The D.C. Circuit in *Longshoremen* found that presumptively unreviewable decisions by the National Mediation Board were reviewable when the agency "had 'refused to exercise the functions assigned to it ...,' *i.e.,* had disclaimed jurisdiction." 785 F.2d at 1100 (quoting *American Air Export & Import Co. v. O'Neill*, 221 F.2d 829, 831 (D.C.Cir.1954)). Similarly, we believe that a decision by the FLRA's General Counsel not to issue an unfair labor practice complaint is reviewable when that decision is based solely on his belief that he lacks jurisdiction to issue such a complaint, thereby refusing to exercise the functions assigned him by the Federal Labor Relations Act. We therefore must determine whether the General Counsel's decision in this case was based solely on the belief that he lacked jurisdiction.

In the original opinion letter explaining why the office refused to issue an unfair labor practice complaint (Appendix A), the General Counsel, without considering the merits of the agency's determination, stat-

ed that the issue raised by the union "would not, standing alone, constitute an unfair labor practice." Appendix A, ¶ 6. Similarly, in his letter denying the union's request for reconsideration (Appendix B), the General Counsel stated that this issue "may be raised *only* with the Authority under the negotiability procedures of the Statute." Appendix B, ¶ 5 (emphasis added). The most reasonable interpretation of this language is that the General Counsel determined, according to his interpretation of the statutes and regulations, that he lacked jurisdiction to issue an unfair labor practice complaint, and therefore the union's only alternative was to pursue the negotiability procedure.

■ The FLRA maintains, however, that the General Counsel's decision "was not based on a conclusion that he lacked jurisdiction over the matters raised in the union's charge," but "on a review of the facts of the case, and a determination that the facts did not establish that the agency had committed an unfair labor practice." A jurisdictional determination, however, necessarily requires some factual review and the application of law to those facts. Here, the General Counsel determined that the *type* of claim raised by the union cannot be an unfair labor practice absent special circumstances, and that the union failed, as a factual matter, to show that any of those special circumstances existed. It stands to reason that a charge that cannot be an unfair labor practice cannot be the basis of an unfair labor practice complaint. The General Counsel, therefore, did not exercise his discretion. Rather, he believed he was prevented from issuing a complaint, specifically finding it was unnecessary to pass upon the merits of the agency's determination. We believe that this is the essence of a jurisdictional decision.

Had the General Counsel based his decision on an exercise of discretion as to the more appropriate procedure, or had he determined after passing on the merits of the union's contentions that the facts did not justify issuance of a complaint, we would be compelled to deny review. Here, however, the General Counsel's letters, while not entirely free from doubt,[1] strongly indicate a belief that the General Counsel lacked jurisdiction to consider the Bureau's action as an unfair labor practice. Thus we find that the General Counsel's decision not to issue an unfair labor practice complaint was based on his belief that he lacked jurisdiction to issue such a complaint. We therefore must examine the General Counsel's statutory and regulatory interpretations to determine if his belief that he lacked jurisdiction was correct.

## II. Statutory and Regulatory Interpretation

### A. The General Counsel's Statutory Interpretation

■ Statutory interpretations promulgated in the course of an agency's nonenforcement decision also are reviewable in their own right. "Nothing in the Administrative Procedure Act or in the holding or policy of *Heckler v. Chaney*, precludes review of a proper plaintiff's timely challenge of an agency's announcement of its interpretation of a statute." *International Union*, 783 F.2d at 245. The *International Union* court held that the Department of Labor's "ultimate decision not to take enforcement action is nonreviewable," but the DOL's "pronouncement of new statutory interpretations in an opinion explaining the nonenforcement decision is reviewable." *Id.* at 239. Here, the district court held that the General Counsel made no such statutory interpretation in the course of his

---

1. The General Counsel's first opinion letter also stated in regard to the union's arguments that "[s]uch contentions would be more appropriately raised with the Authority under the negotiability procedures of the Statute rather than the General Counsel as an allegation of an unfair labor practice." Appendix A, ¶ 6. This language might suggest the General Counsel was choosing between two alternative procedures rather than ruling one alternative out on jurisdictional grounds. In light of the previously quoted language and the General Counsel's statutory and regulatory interpretations, however, we believe the decision was based on the belief that the General Counsel lacked jurisdiction. The General Counsel will have the opportunity to re-evaluate his position and clarify his reasons on remand.

opinion, and therefore *International Union* did not apply. We disagree.

■ The National Guard Bureau was obligated to approve Article 23 of the collective bargaining agreement "if the agreement is in accordance with the provisions of [the Labor–Management Relations] chapter and any other applicable law, rule, or regulation." 5 U.S.C. § 7114(c)(2). The Bureau refused to approve Article 23, however, claiming it infringed management's rights to determine internal security practices under § 7106(a)(1). The General Counsel made the following conclusion in his letter refusing to issue an unfair labor practice complaint:

> Where, as here, there is no evidence of bad faith bargaining and an agency head or his designee disapproves a collective bargaining agreement pursuant to the procedures in section 7114(c) of the Statute, such a disapproval may be challenged by a negotiability appeal to the Authority, but would not, standing alone, constitute an unfair labor practice.

Appendix A, ¶ 6. This statement is a general proposition of law. According to the General Counsel, it is not an unfair labor practice under 5 U.S.C. § 7116(a) for an agency head to refuse to approve a collective bargaining agreement pursuant to § 7114(c)(2) unless some evidence of bad faith bargaining exists. When the FLRA implements a statutory interpretation in the course of a refusal to issue an unfair labor practice complaint, "courts are emphatically qualified to decide whether an agency has acted outside of the bounds of reason." *International Union*, 783 F.2d at 245; *see Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843 n. 9, 104 S.Ct. 2778, 2781 n. 9, 81 L.Ed.2d 694 (1984) ("The judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent."); *accord Southern California Edison Co. v. Federal Energy Regulatory Comm'n*, 770 F.2d 779, 782 (9th Cir.1985). We find that the General Counsel issued a new legal interpretation of 5 U.S.C. § 7116(a), grafting a bad faith

requirement on that section's definition of agency unfair labor practices in the context of alleged violations of § 7114(c). Such an interpretation is subject to judicial review.

*Statutory Interpretation Analysis*

We review the General Counsel's statutory construction under the standards established in *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

> When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Id.* at 842–43, 104 S.Ct. at 2781–82 (footnotes omitted). As the D.C. Circuit discovered, Congress did not directly address the relationship between negotiability appeals and unfair labor practice procedures. *National Labor Relations Bd. Union v. Federal Labor Relations Auth.*, 834 F.2d 191, 199–202 (D.C.Cir.1987). Nor have we been able to find any express congressional intent on the relationship between the refusal of an agency head to approve a collective bargaining agreement under 5 U.S.C. § 7114(c) and the definitions of an unfair labor practice in § 7116(a). In the absence of clear congressional intent, we must determine the permissibility of the General Counsel's interpretation.

■ We find that the General Counsel's interpretation is impermissible. The statute states that "[a]n agreement between

any agency and an exclusive representative shall be subject to approval by the head of the agency.... [who] shall approve the agreement ... if the agreement is in accordance with the provisions of this chapter and any other applicable law, rule, or regulation...." 5 U.S.C. § 7114(c)(1), (2). Section 7116(a) lists unfair labor practices and provides that "it shall be an unfair labor practice for an agency ... to otherwise fail or refuse to comply with any provision of this chapter." *Id.* § 7116(a)(8). A plain reading of these sections leads to the conclusion that an agency head's disapproval of a collective bargaining agreement is an unfair labor practice if the agreement is in accordance with applicable law. Neither § 7114(c) nor § 7116(a) requires that an agency head's refusal to approve a collective bargaining agreement include evidence of bad faith bargaining before such a disapproval can be an unfair labor practice.

The FLRA nevertheless attempts to justify its interpretation by claiming that a bad faith bargaining requirement is consistent with the Labor–Management Relations Chapter as a whole. The FLRA notes that § 7103(a)(12) defines "collective bargaining" to include the obligation of unions and agency employers to meet "and bargain in a good faith effort to reach agreement" on conditions of employment. Therefore, according to the FLRA, "it is not at all unreasonable to establish a bad-faith requirement in assessing whether [an unfair labor practice] has been committed under section 7116(a)." Such a gloss on § 7116(a) changes the entire character of that section and renders superfluous subsection (5), which defines one type of unfair labor practice as a "refus[al] to consult or negotiate in good faith with a labor organization as required by this chapter." 5 U.S.C. § 7116(a)(5). "We should avoid an interpretation of a statute that renders any part of it superfluous and does not give effect to all of the words used by Congress." *Beisler v. Commissioner*, 814 F.2d 1304, 1307 (9th Cir.1987). Bad faith bargaining, therefore, cannot be implied as a prerequisite to finding an unfair labor practice under § 7116(a).

Neither can such a requirement be implied in § 7114(c). Subsection (c) provides that the agency head *shall* approve a collective bargaining agreement (which has already been reached through the good faith bargaining required in subsection (b)) "if the agreement is in accordance with the provisions of this chapter and any other applicable law, rule, or regulation." 5 U.S.C. § 7114(c)(2). Whether a provision of the agreement is in accordance with applicable law is not subject to bargaining: either the agreement accords with the law or it does not. The General Counsel's interpretation thus defies logic by requiring evidence of bad faith bargaining where there is no bargaining. Moreover, implying that an agency head's decision must include evidence of bad faith bargaining when bargaining plays no part in that decision is tantamount to stating that the agency head's decision can never be considered an unfair labor practice. Such an interpretation conflicts with a plain reading of the statute and simply cannot be implied from the operation of the Labor–Management Relations Chapter as a whole.

The General Counsel's bad faith bargaining requirement cannot be implied in either § 7114(c) or § 7116(a). We hold, therefore, that the General Counsel's interpretation is impermissible and that an agency head's refusal to approve a collective bargaining agreement may be an unfair labor practice in the absence of bad faith bargaining. Thus, the General Counsel erroneously concluded that the union's claim cannot be an unfair labor practice and that he was without jurisdiction to consider it.

**B. The General Counsel's Regulatory Interpretation**

The General Counsel's jurisdictional decision was also based on his rejection of the union's argument that the disapproval of Article 23 was a "contemplated change[ ] in conditions of employment" under 5 C.F.R. § 2423.5, and therefore reviewable as an unfair labor practice. "[O]ur approval of the authority to interpret and implement statutory authority through adjudications has always contemplated the availability of judicial review to ensure that the an-

nounced interpretations are consistent with the governing statute." *International Union*, 783 F.2d at 246. We must also ensure that an agency's interpretation of a regulation that is itself a statutory interpretation is consistent with the governing statute.

The regulatory interpretation at issue here involves 5 C.F.R. §§ 2423.5 and 2424.5. Sections 2423.5 and 2424.5 are nearly identical and establish a procedure for dealing with unfair labor practice charges involving a negotiability issue which are filed under both negotiability appeal and unfair labor practice procedures.

The concluding sentences of 5 C.F.R. §§ 2423.5 and 2424.5 categorically deny labor organizations [unfair labor practice] remedies for an agency's good-faith but mistaken refusal to discuss a bargaining proposal because its adoption would allegedly intrude on protected management prerogatives or offend federal law or a Government-wide rule or regulation, unless the agency's refusal is coupled with "actual or contemplated changes in conditions of employment."

*National Labor Relations Bd. Union*, 834 F.2d at 199 (quoting 5 C.F.R. §§ 2423.5 and 2424.5). Thus, in addition to establishing agency procedure, these regulations are an agency interpretation of its enabling statute, specifically 5 U.S.C. §§ 7106 and 7117, which define proposals to which the agency's duty to bargain in good faith does not extend, and § 7116(a), which defines unfair labor practices. These regulations, therefore, essentially impose jurisdictional requirements: The General Counsel cannot issue an unfair labor practice complaint involving a negotiability issue in the absence of bad faith bargaining or actual or contemplated changes in conditions of employment.

Here, the FLRA found that "the determination by the [National Guard Bureau] that technicians must wear the military uniform while performing technician duties constituted management's choice of a 'methods and means of performing work' within the meaning of section 7106(b) of the Statute and accordingly ... it is not within the

duty to bargain." Appendix A, ¶ 3 (citing *Division of Military and Naval Affairs, State of New York, Albany, N.Y.*, 15 F.L.R.A. No. 65 (1984), *aff'd sub nom., New York Council, Ass'n of Civilian Technicians v. Federal Labor Relations Auth.*, 757 F.2d 502 (2d Cir.), *cert. denied*, 474 U.S. 846, 106 S.Ct. 137, 88 L.Ed.2d 113 (1985)). Because the National Guard Bureau's disapproval of Article 23 was based on the "agency's allegation that the duty to bargain in good faith does not extend to the matter proposed to be bargained," the union's claim could only be considered as an unfair labor practice if it "involve[d] actual or contemplated changes in conditions of employment." 5 C.F.R. §§ 2423.5 and 2424.5.

The union argued that the technicians had the option of wearing civilian attire under the previous collective bargaining agreement, and therefore the National Guard Bureau's refusal to approve Article 23 was a "contemplated change" within the meaning of § 2423.5. In the course of dismissing the union's claim, the General Counsel took the position that this was not a contemplated change in employment conditions. Appendix A, ¶ 7; Appendix B, ¶ 5. The General Counsel concluded that, because the technicians still had the option to wear civilian attire pending the outcome of administrative appeal, "neither the [National Guard Bureau] nor the [Montana Air National Guard] had unilaterally changed conditions of employment concerning dress and attire." Appendix A, ¶ 7.

This conclusion involves a legal interpretation of § 2423.5 as well as an application of that interpretation to the facts supporting the union's charge. The General Counsel interpreted the phrase "actual or contemplated changes" to mean only *actual* changes: "the instant charge concerns the [National Guard Bureau's] section 7114(c) disapproval in the context of contract negotiations and *not an actual change in conditions of employment.*" Appendix A, ¶ 7 (emphasis added). At oral argument, counsel for the FLRA reinforced this interpretation, maintaining that implementation of the National Guard Bureau's disapproval of Article 23 was merely "speculative"

pending the outcome of the administrative appeal process, and therefore did not amount to an actual or contemplated change in employment conditions. The General Counsel further modified the term "contemplated change" by stating that the National Guard Bureau "proposed no changes in this case but merely refused to approve the Union's proposal that technicians continue to retain the option of wearing civilian attire." Appendix B, ¶ 5. In other words, the General Counsel interpreted § 2423.5 to mean that a refusal to approve the continuation of a current employment practice is not a change in employment conditions.

*Regulatory Interpretation Analysis*

■ Judicial review of an agency's interpretation of its own regulations is guided by the Supreme Court's decision in *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945). The administrative interpretation "becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation." *Id.* at 414, 65 S.Ct. at 1217. The Ninth Circuit has expanded on this standard, requiring a two-step examination of the agency's interpretation.

We must first examine the interpretation itself in light of the language of the regulations. The words must be reasonably susceptible to the construction placed upon them by the [agency], both on their face and in light of their prior interpretation and application. The interpretation must sensibly conform to the purpose and wording of the regulations.

Second, the [agency's] construction must be reviewed in relation to the governing statutes.... Agency regulations must be consistent with and in furtherance of the purposes and policies embodied in the congressional statutes which authorize them. Those which are not are contrary to law and must be set aside.

*Pacific Coast Medical Enters. v. Harris*, 633 F.2d 123, 131 (9th Cir.1980) (citations omitted).

We find that the General Counsel's interpretation of §§ 2423.5 and 2424.5 does not sensibly conform to either the regulations or the underlying statute. The General Counsel's interpretation of these regulations effectively eliminates the words "contemplated" and "change" from the regulations. According to the General Counsel's interpretation, only an *actual* change in conditions of employment may be considered under §§ 2423.5 and 2424.5, and "change" for this purpose does not include a refusal to allow a current employment practice to continue. Such an interpretation clearly conflicts with the language of the regulations.

The FLRA has attempted to modify its interpretation before this court by claiming that there was no "announced intention to implement any 'actual or contemplated change' in conditions of employment." Absent such an announcement, according to the FLRA, implementation of any change would be "speculative" pending the outcome of the appeals process and therefore could not amount to an actual or contemplated change. We do not believe that either the spirit or the language of the regulations supports such an "implementation" test.

In any event, the National Guard Bureau's disapproval of Article 23 constituted an announcement of a contemplated change of the previous right to wear civilian clothes. "Contemplate" is defined as "to have in view as a purpose: anticipate doing or performing." *Webster's Third New International Dictionary* 491 (1976). We agree that there must be some indication that the challenged agency decision involves or will result in a change in employment conditions. Here, the National Guard Bureau's disapproval of Article 23 represented an unambiguous intention to implement a change. Allowing an agency to negate a contemplated change by merely delaying enforcement of that change until completion of the appeals process would virtually invite agencies to do exactly what was done here: postpone announcement or implementation of a change until the General Counsel refuses to issue an unfair labor practice complaint. If, in addition, the FLRA followed the policy pursued by the General Counsel in this case of dis-

regarding conduct occurring after the charge is filed, *see* Appendix B, ¶ 5, an agency could never be found to have contemplated a change in employment conditions. The regulations then would apply only to actual changes imposed prior to a union's filing of an unfair labor practice claim, eliminating the portion of the regulations referring to contemplated changes. A regulation cannot be susceptible to a construction that ignores or renders meaningless parts of its language.

Similarly, the General Counsel's interpretation of "change" is nothing short of absurd. "Change" is defined as "the action of making something different in form, quality, or state: ... a deviation from established character, sequence, or condition." *Webster's Third New International Dictionary* 374 (1976). Saying that an agency head has not proposed a change by refusing to allow a current condition to continue is simply illogical. It is beyond dispute that terminating a prior right constitutes a change. The General Counsel's interpretation, therefore, effectively eliminates the regulatory requirement that negotiability issues involving an actual or contemplated change can be pursued as an unfair labor practice.

Nor does the General Counsel's interpretation sensibly conform to the purpose of the regulations. The FLRA has not expanded on the purpose of the regulations beyond the language of the regulations themselves. *See National Labor Relations Bd. Union,* 834 F.2d at 199 (quoting the FLRA's terse defense of the regulations as statutory interpretations). Requiring an actual or contemplated change in employment conditions, however, seems to reflect an attempt to distinguish between benefits employees currently enjoy and benefits they do not have but want to obtain. Such a distinction has practical appeal. An agency's recharacterization of existing benefits as nonnegotiable in an attempt to deprive employees of those benefits would seem to merit the more exacting

remedial and procedural measures available under unfair labor practice procedures, while a union's attempt to negotiate additional benefits at the expense of the agency's reserved management rights arguably is more appropriately considered under the less demanding negotiability appeal procedures. *See id.* at 199–200. By effectively eliminating the requirement that the case involve an actual or contemplated change in conditions of employment, the General Counsel's interpretation erodes the distinction between current and possible benefits, thus diluting the apparent purpose of the regulations.

Finally, the General Counsel's interpretation cannot be squared with the statutory provisions underlying the regulations. The statute does not restrict a union's ability to pursue either issuance of an unfair labor practice complaint or a negotiability appeal when challenging alleged unfair labor practices. On its face, the statute provides equal access to both procedures, regardless of the nature of the issue involved. The court in *National Labor Relations Bd. Union* nevertheless found that the regulations, which limit the ability of unions to pursue negotiability issues as unfair labor practices, are based on a permissible construction of the statute. *Id.* at 199–202. The General Counsel's interpretation would further restrict that ability. Such an interpretation goes too far and is not consistent with the statute's lack of limitations on the union's ability to seek unfair labor practice procedure and relief. Without expressing an opinion on the court's conclusion in *National Labor Relations Bd. Union* or the validity of the regulations themselves,[2] we conclude that the restrictions embodied in the General Counsel's interpretation are inconsistent with the statute and must be set aside as contrary to law.

## CONCLUSION

The district court correctly concluded that the General Counsel's decision not to

**2.** The union asks us to reverse the district court's decision upholding the validity of the regulations based on the opinion in *National Labor Relations Bd. Union.* Because we find

that the General Counsel's interpretation was inconsistent with both the regulations and the statute, we do not reach the validity of the regulations themselves.

issue an unfair labor practice complaint is presumptively unreviewable. Here, however, the General Counsel's decision was based on the mistaken belief that he lacked jurisdiction to issue an unfair labor practice complaint. We therefore reverse the district court's grant of summary judgment. We also find that the General Counsel made impermissible statutory and regulatory interpretations which formed the basis of his decision not to issue an unfair labor practice complaint. We remand to the district court to direct the General Counsel to exercise his discretion in accordance with this opinion's ruling on those interpretations. We do not hold that the General Counsel must issue an unfair labor practice complaint in this case. We hold only that the General Counsel must consider the merits of the union's claim in accordance with his statutory obligations and decide whether to issue such a complaint.

REVERSED and REMANDED.

### APPENDIX A

January 28, 1986

Daniel M. Schember

Gaffney, Anspach, Schember, Klimaski & Mark, P.C.

Attorneys at Law

1120 G Street, N.W., Suite 200

Washington, D.C. 20005

> Re: National Guard Bureau
> Falls Church, Virginia
> Case No. 7–CA–50444

Dear Mr. Schember:

Your appeal from the Regional Director's refusal to issue a complaint in the above-named case, in which it was alleged that the Charged Party violated section 7116(a)(1) and (8) of the Federal Service Labor–Management Relations Statute, has been considered carefully.[1]

The charge alleged essentially that the Agency (the National Guard Bureau) violat-ed the Statute by not approving the dress and appearance standards article of a negotiated collective bargaining agreement, pursuant to section 7114(c) of the Statute.

The evidence adduced by the investigation shows that Article 23 of the 1981 collective bargaining agreement negotiated between the Union (the Montana Air Chapter, Association of Civilian Technicians) and the Activity (the Montana Air National Guard) essentially provided that employees have the option of wearing either the military uniform or standard civilian attire while performing their civilian technician duties. On February 1, 1984, the Activity and the Union commenced negotiations for a new collective bargaining agreement. On July 17, the parties reached agreement on Article 23. As relevant herein, this agreement reflects the same optional civilian attire provision as in the 1981 agreement. Also on July 17, the Authority found that the determination by the Agency that technicians must wear the military uniform while performing technician duties constituted management's choice of a "methods and means of performing work" within the meaning of section 7106(b) of the Statute and accordingly, while this requirement may be bargained at the election of the Agency, it is not within the duty to bargain. *Division of Military and Naval Affairs, State of New York, Albany, New York*, 15 FLRA No. 65 (1984), aff'd sub nom. *New York Council, Association of Civilian Technicians v. Federal Labor Relations Authority*, 757 F.2d 502 (2nd Cir. 1985). Based upon a review of the Authority's *State of New York* decision, the Activity subsequently sought to reopen negotiations on Article 23, but the Union refused these requests.[2] Then, on April 4, 1985, the parties executed the entire collective bargaining agreement.

The agreement was forwarded to the Agency on April 4 for approval pursuant to the provisions of section 7114(c) of the Statute. Within the time limits established by the

---

1. The Region considered the charge as also alleging a violation of section 7116(a)(5).

2. The activity relied upon letters from the Agency dated August 13, 21, and September 7, which essentially advised the Activity that any proposals presented during negotiations which would permit technicians the option to wear standard civilian attire should be declared nonnegotiable.

Statute, the Agency's Chief disapproved certain articles of the agreement as violative of Federal statute, controlling policy and/or regulation. By letter dated May 2, the Agency's Chief, Labor Relations Division, informed the Activity that Article 23 violated the section 7106(a)(1) management right to determine its internal security practices and the Agency's policy as stated in the August 13, 1984, letter. On May 31, the Union filed the instant charge.

On these facts, the Regional Director determined that the Agency's timely nonnegotiability assertion was neither frivolous nor made in bad faith. Therefore, in the absence of a change in conditions of employment, she determined that "a timely Section 7114(c) disapproval based on a reserved management right in Section 7106(a)(1) of the Statute would render such assertion a pure negotiability question as opposed to an unfair labor practice." Thus, since one of the reasons the Agency declined to approve the article in question was that it conflicted with the reserved management right to determine internal security practices, a right which is nonnegotiable and may not be waived at the exclusive recognition level, the Regional Director concluded that "the instant case presents a pure negotiability issue."

In agreement with the Regional Director, it was concluded that further proceedings on the instant charge are unwarranted. Where, as here, there is no evidence of bad faith bargaining and an agency head or his designee disapproves a collective bargaining agreement pursuant to the procedures in section 7114(c) of the Statute, such a disapproval may be challenged by a negotiability appeal to the Authority, but would not, standing alone, constitute an unfair labor practice. Your appeal is essentially based upon your disagreement with the Agency's determination that Article 23 was contrary to management's section 7106(a)(1) right to determine its internal security practices. Such contentions would be more appropriately raised with the Authority under the negotiability procedures

of the Statute rather than with the General Counsel as an allegation of an unfair labor practice.[3]

On appeal, you also allege that the instant case involves a contemplated unilateral change in conditions of employment. Thus, you contend that pursuant to the 1981 collective bargaining agreement civilian technicians had the option to wear uniforms or standard civilian attire, whereas if the Agency's disapproval of a virtually identical provision in the 1985 agreement is upheld, the technicians would lose the option to wear civilian attire. However, the evidence is undisputed that at the time the charge was filed the technicians still had the option to wear civilian attire. Therefore, it was concluded that neither the Agency nor the Activity had unilaterally changed conditions of employment concerning dress and attire. Rather, as stated by the Regional Director, the instant charge concerns the Agency's section 7114(c) disapproval in the context of contract negotiations and not an actual change in conditions of employment.

Accordingly, the Agency did not violate its Statutory obligations when it disapproved Article 23, and your appeal is denied.

For the General Counsel.

Sincerely,
Michael D. Nossaman
Assistant General Counsel
for Appeals

APPENDIX B

March 10, 1986

Daniel M. Schember

Gaffney, Anspach, Schember, Klimaski & Mark, P.C.

Attorneys at Law

1120 G Street, N.W., Suite 200

Washington, D.C. 20005

Re: National Guard Bureau
Falls Church, Virginia
Case No. 7–CA–50444

Dear Mr. Schember:

---

**3.** In light of the disposition of your appeal, it is unnecessary to pass upon your contentions relating to the merits of the Agency's determination.

Your request for reconsideration of the January 28, 1986, denial of your appeal from the Regional Director's decision not to issue a complaint in the above-named case, has been considered carefully.

As noted in the decision letter denying your appeal, the charge in this case principally alleged that the Agency (the National Guard Bureau) violated section 7116(a)(1) and (8) of the Statute by not approving the dress and appearance standards article of a negotiated collective bargaining agreement, pursuant to section 7114(c) of the Statute.[1]

The evidence adduced by the investigation showed that during negotiations for a new collective bargaining agreement, on July 17, 1984, the Union (the Montana Air Chapter, Association of Civilian Technicians) and the Activity (the Montana Air National Guard) reached agreement on a dress and appearance standards article which essentially provided that employees would have the option of wearing either the military uniform or standard civilian attire while performing their civilian technician duties. Also on July 17, the Authority issued its decision in *Division of Military and Naval Affairs, State of New York, Albany, New York*, 15 FLRA No. 65 (1984), finding that the determination by the Agency that technicians must wear the military uniform while performing technician duties constituted management's choice of a "method and means of performing work" within the meaning of section 7106(b) of the Statute. Then, on April 4, 1985, the parties executed the entire collective bargaining agreement. Subsequently, the agreement was forwarded to the Agency head for approval pursuant to the provisions of section 7114(c) of the Statute. Within the time limits established by the Statute, the Agency's Chief disapproved the dress and appearance standards article as violative of management's right under section 7106(a)(1) of the Statute to determine its internal security practices.

On these facts, the Regional Director essentially determined that the Agency's timely nonnegotiability assertion based upon a reserved management right during the section 7114(c) approval process constituted "a pure negotiability question." Similarly, on appeal, it was concluded that "[w]here, as here, there is no evidence of bad faith bargaining and an agency head or his designee disapproves a collective bargaining agreement pursuant to the procedures in section 7114(c) of the Statute, such a disapproval may be challenged by a negotiability appeal to the Authority, but would not, standing alone, constitute an unfair labor practice."

In your request for reconsideration, you essentially contend that the Agency "contemplated" a change in working conditions (e.g., that technicians would lose the option to wear civilian attire) when the Agency's Chief disapproved the dress and appearance standards article, and that his disapproval therefore was subject to review in an unfair labor practice proceeding pursuant to section 2423.5 of the regulations of the Authority. In this regard, your request for reconsideration basically raises the same general arguments presented by you during the investigation and in your appeal, but advances no persuasive argument not considered previously to show that the Regional Director's decision was incorrect or not supported by the evidence. The Agency's Chief proposed no changes in this case but merely refused to approve the Union's proposal that technicians continue to retain the option of wearing civilian attire. As a result, the instant charge concerns only the Agency Chief's section 7114(c) disapproval of a provision arising out of contract negotiations, and, as stated in the decision letter denying your appeal, your disagreement with the Agency Chief's determination that this provision was contrary to management's rights may be raised only with the Authority under the negotiability procedures of the Statute. *See, e.g., American Federation of Government Employees, AFL–CIO, Local 2*, 11 FLRA No. 72, 11 FLRA 359, 361 (1983). Finally, to the extent that you now allege that the Activity actually changed conditions of employment concerning dress and

---

1. The charge was considered as also alleging a violation of section 7116(a)(5).

766

attire on February 18, 1986, this allegation rests on conduct occurring well after the instant charge was filed and, as such, has not been considered herein.

Accordingly, your request for reconsideration is denied.

For the General Counsel.

Sincerely,
Michael D. Nossaman
Assistant General Counsel
for Appeals