ASSOCIATION OF CIVILIAN TECHNI-
CIANS, MONTANA AIR CHAPTER
NO. 29, Petitioner,

v.

FEDERAL LABOR RELATIONS
AUTHORITY, Respondent.

No. 92–1379.

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 31, 1994.

Decided May 6, 1994.

Daniel M. Schember, Washington, DC, argued the cause and filed the brief for petitioner.

William R. Tobey, Deputy Sol., Federal Labor Relations Authority, Washington, DC, argued the cause for respondent. On the brief were David M. Smith, Sol., Federal Labor Relations Authority, Arthur A. Horowitz and Frederick M. Herrera, Attorneys, Federal Labor Relations Authority, Washington, DC.

Before WALD, HENDERSON and RANDOLPH, Circuit Judges.

Opinion for the Court filed by Circuit Judge WALD.

Concurring opinion filed by Circuit Judge HENDERSON.

WALD, Circuit Judge:

Petitioner, the Association of Civilian Technicians, Montana Air Chapter No. 29 ("Union") negotiated and executed a collective bargaining agreement ("Agreement") with the Montana National Guard ("Activity") permitting technicians to wear standard civilian attire in place of a uniform. When the Agreement was presented for review to the head of the National Guard Bureau ("Agency"), the Agency head disapproved the agreement, *inter alia*, on the basis that the clause pertaining to civilian attire violated "applicable law," 5 U.S.C. § 7114(c)(2), because it infringed upon management's reserved rights to "determine ... internal security practices," *id.* at § 7106(a)(1). The Union concedes that the dress code may interfere with traditional management rights to determine security practices. Yet it maintains that the Agreement is nonetheless not contrary to law because the local Activity elected to bargain over the matter pursuant to § 7106(b)(1) which, according to petitioner, permits the agency to negotiate about certain matters despite their enumeration as management rights under § 7106(a).

At the behest of the Union, the General Counsel of the Federal Labor Relations Authority ("FLRA" or "Authority") issued an unfair labor complaint challenging the Agency head's disapproval of the Agreement, but the complaint was ultimately dismissed by the FLRA on the ground that the Agreement infringed upon management's right to determine internal security procedures. *See National Guard Bureau Alexandria, Virginia,* 45 F.L.R.A. No. 43 (July 15, 1992) ("FLRA op.") *reprinted in* Appendix to Petitioner's Brief ("A.") 5. The Union now petitions for review of the FLRA's decision. Because we agree with the Union's argument, we grant the petition and reverse.

## I. BACKGROUND

The Federal Service Labor–Management Relations Act ("FSLMRA" or "Act"), 5 U.S.C. §§ 7101–35 (1988), which establishes the framework for collective bargaining between federal civil service employees and their respective agencies governs this dispute. Under the Act, agencies are required to "negotiate in good faith" over "conditions of employment," *id.* at §§ 7114(a)(4), 7102, which include "personnel policies, practices, and matters ... affecting working conditions" but not matters "to the extent [they] are specifically provided for by Federal statute," *id.* at § 7103(a)(14). The Act emphasizes that the duty to bargain in good faith does not extend to matters "inconsistent with any Federal law or any Government-wide rule or regulation." *Id.* at § 7117(a)(1). Nor does the duty to bargain extend to matters which are the subject of an *agency*-wide regulation, unless the Authority determines that "no compelling need ... exists for the rule or regulation." *Id.* at § 7117(a)(2).

In an effort to balance collective bargaining rights of employees against the need to secure the effective administration of government, the Act also shields certain management rights from the negotiation process. Section 7106(a) provides that "[s]ubject to subsection (b) of this section, nothing in this chapter shall affect the authority of any management official of any agency ... to determine the mission, budget, organization, number of employees, and internal security practices of the agency." Read in isolation, § 7106(a) would keep all management decisions listed in that subsection off the bargaining table. However, as the language of subsection (a) indicates, the nonnegotiability of

management prerogatives is subject to subsection (b) which, in turn, provides:

(b) Nothing in this section shall preclude any agency and any labor organization from negotiating—

(1) at the election of the agency, on the numbers, types, and grades of employees or positions assigned to any organizational subdivision, work project, or tour of duty, or on the technology, methods, and means of performing work;

(2) procedures which management officials of the agency will observe in exercising any authority under this section; or

(3) appropriate arrangements for employees adversely affected by the exercise of any authority under this section by such management officials.

*Id.* at § 7106. After a bargaining agreement has been reached by an agency's negotiators and a union, the agreement

shall be subject to approval by the head of the agency ... [who] shall approve the agreement within 30 days from the date the agreement is executed if the agreement is in accordance with the provisions of this chapter and any other applicable law, rule, or regulation (unless the agency has granted an exception to the provision).

*Id.* at § 7114(c).

Invoking § 7114, the head of the National Guard Bureau in May, 1985, disapproved a collective bargaining agreement executed by the local Activity and the Union during April of that year on the basis that the dress code specified in Article 23 of the Agreement violated both agency policy and the agency's right to determine its security procedures. FLRA op., 45 F.L.R.A. No. 43 at 2–3 (A. 6–7). Based upon the Union's charge that the head of the Agency had exceeded his § 7114(c) disapproval authority because the dress code was a permissible subject of bargaining, the General Counsel of the Authority issued an unfair labor complaint against the Agency. *See* § 7116(a)(1), (a)(5), & (a)(8); FLRA op., 45 F.L.R.A. No. 43 at 1–2 (A. 5–6).

Responding to the complaint before the FLRA the Agency maintained:

(1) the issue [of the dress code] involved the internal security of the Agency; (2) Article 23 violated an Agency rule [prescribing the wearing of uniforms] for which there was a compelling need; and (3) even if the above defenses are without merit, a remedial order that unit employees be allowed to regularly wear civilian attire would not effectuate the purposes of the [Act].

FLRA op., 45 F.L.R.A. No. 43 at 7 (A. 11). The Agency "established to [the Authority's] satisfaction that the wearing of a military uniform has a reasonable relation to its stated internal security needs of protecting the base and the aircraft, weapons systems and ancillary equipment on that facility." *Id.* at 13 (A. 17). Therefore, the FLRA concluded that Article 23 was nonnegotiable because it directly interfered with management's right to determine its internal security procedures under § 7106(a)(1). The FLRA acknowledged that "there is no dispute that a requirement to wear the military uniform constitutes management's choice of a 'methods and means of performing work' within the meaning of section 7106(b)(1) of the [Act]." *Id.* at 15 (citations omitted) (A. 19). However, it rejected the Union's claim "that section 7106(b)(1) 'is an exception to § 7106(a)' " and found nothing in its precedent that prevented the Agency head from disapproving the Agreement on the basis that it interfered with the Agency's right to determine its internal security practices. *Id.* As a result, the FLRA found it "unnecessary" to pass upon the Agency's additional contentions and the unfair labor complaint was dismissed. *Id.* at 14 n. 7 (A. 18). For reasons set forth below, we now reverse that decision. We, too, reach only the first of the Agency's three contentions, leaving consideration of the others to the Authority in the first instance on remand.

## II. DISCUSSION

### A. *Standard of Review*

Section 7123(c) of the Act provides for judicial review of final orders of the Authority under § 706 of the Administrative Procedure Act, 5 U.S.C. § 706. *See* 5 U.S.C. § 7123(c); *Department of Treasury, Bureau*

*of Alcohol, Tobacco and Firearms v. FLRA,* 857 F.2d 819, 820–21 (D.C.Cir.1988). Accordingly, we set aside an FLRA decision when "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Since the Authority has been charged with implementing the FSLMRA, *see* 5 U.S.C. § 7105, we defer to the Agency in matters within its expertise—such as the purpose and meaning of the FSLMRA. *Bureau of Alcohol, Tobacco and Firearms v. FLRA,* 464 U.S. 89, 97, 104 S.Ct. 439, 444, 78 L.Ed.2d 195 (1983). We do not, therefore, substitute our interpretation of the Act for the Authority's whenever we prefer our own. At the same time, we do not abdicate our judicial responsibility to review an agency's decision simply because the agency has acted within its regulatory domain. Instead, we uphold the FLRA's interpretation of the Act as long as it is a "permissible construction" of the statute and there is no clear congressional intent "directly address[ing] the precise question at issue" which would require a contrary conclusion. *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984).

### B. *Agency Head Approval Under Section 7114(c)*

■ The plain language of the statute provides that the agency head "shall" approve an executed agreement "if the agreement is in accordance with the provisions of ... applicable law, rule, or regulation." 5 U.S.C. § 7114(c)(2). The word "shall" generally indicates a command that admits of no discretion on the part of the person instructed to carry out the directive. *See Exportal Ltda. v. United States,* 902 F.2d 45, 50 (D.C.Cir.1990). So here, too, the statute clearly orders that unless the agreement is unlawful or in violation of a rule or regulation, the head of the agency shall approve the agreement and permit it to go into effect. The agency head, then, is not given free reign to prune collective bargaining agreements where local negotiators have come to legally viable arrangements.

This common-sense reading of the Act is amply borne out by its legislative history. The agency head approval provision first appeared in the Senate version of the bill and was later added to the House version in conference. *See* 124 CONG.REC. H13,608 (daily ed. Oct. 14, 1978) (remarks by House manager, Rep. Ford), *reprinted in* SUBCOMMITTEE ON POSTAL PERSONNEL AND MODERNIZATION OF THE HOUSE COMMITTEE ON POST OFFICE AND CIVIL SERVICE, LEGISLATIVE HISTORY OF THE FEDERAL SERVICE LABOR-MANAGEMENT RELATIONS STATUTE, TITLE VII OF THE CIVIL SERVICE REFORM ACT OF 1978, 96th Cong., 1st Sess. 995 (1979) ("LEGISLATIVE HISTORY"); S.2640, 95th Cong., 2d Sess. § 7219 (1978), *reprinted in* LEGISLATIVE HISTORY, *supra,* at 550, 591; *see generally American Fed'n of Gov't Employees v. FLRA,* 778 F.2d 850, 858 (D.C.Cir.1985) ("*AFGE*") (discussing legislative history of agency head provision). As the Senate Committee explained, "a substantially identical provision is contained in Executive Order 11491" which was superseded by the FSLMRA. S.REP. No. 969, 95th Cong., 2d Sess. 109 (1978), *reprinted in* LEGISLATIVE HISTORY, *supra,* at 743, 769.

■ As we noted in *AFGE,* the Executive Orders, which until passage of the FSLMRA had regulated labor-management relations in federal employment, "had always made provisions for head of the agency review." *AFGE,* 778 F.2d at 858 n. 12. *See* Exec.Order 11,491, sec. 15, 34 Fed.Reg. 17,605, 17,-612 (1969), *reprinted in* LEGISLATIVE HISTORY, *supra,* at 1244, 1252; Exec.Order 10,988, sec. 7, 27 Fed.Reg. 551, 554 (1962), *reprinted in* LEGISLATIVE HISTORY, *supra,* at 1211, 1214. However, while the first Executive Order regulating federal labor-management relations simply provided that any agreement "must be approved by the head of the agency," Exec.Order 10,988, sec. 7, *supra,* the broad scope of that review was narrowed by Executive Order 11,491. "*[I]n order to prevent 'second guessing' on substantive issues,* the scope of such review was limited to the agreement's conformity with laws, existing published agency policies and regulations, and regulations of appropriate authorities outside the agency." Federal Labor Relations Council, *Summary of Developments to*

*1977, reprinted in* LEGISLATIVE HISTORY, *supra,* at 1160, 1167 (emphasis added).[1] Thus, when local agency negotiators execute a collective bargaining agreement over matters that are permissible subjects of bargaining under the law and current agency policy, their election to negotiate may not be subsequently withdrawn by the agency head. *Cf.* 124 CONG.REC. H13,608 (daily ed. Oct. 14, 1978) (statement by Rep. Ford) ("In general, agency negotiators are to be fully empowered to agree to exceptions to agency regulations concerning conditions of employment, including portions of agency regulations supported by compelling need where the need does not apply to the portion of the regulation."), *reprinted in* LEGISLATIVE HISTORY, *supra* at 995. This limitation is unambiguously reflected in the language of § 7114(c) itself.

The agency head's disapproval of an agreement under § 7114(c), then, is essentially an assertion of nonnegotiability of matters that have erroneously been subjected to collective bargaining. When an agreement is contrary to law or applicable regulation, its execution by local negotiators and the union is irrelevant, since, as the Ninth Circuit observed in *Montana Air Chapter No. 29, Ass'n of Civilian Technicians, Inc. v. FLRA,* 898 F.2d 753, 759 (9th Cir.1990),

> [w]hether a provision of the agreement is in accordance with applicable law is not subject to bargaining: either the agreement accords with the law or it does not.

### C. *The FLRA's Decision*

■ We turn, then, to the FLRA's conclusion that this Agreement is contrary to applicable law. *See* FLRA op., 45 F.L.R.A. No. 43 at 14 (A. 18). The FLRA and the Agency concede that the dress code is a means and method of performing work which falls under § 7106(b)(1). The FLRA further agrees that "where management at the local level exercises its discretion to bargain on a section 7106(b)(1) matter and reaches an agreement, the agency head may not subsequently disapprove that provision under section 7114(c) of the [FSLMRA] simply because it relates to section 7106(b)(1) matters." Brief for the

FLRA at 11 (citing *National Ass'n of Gov't Employees, Local R4–75,* 24 F.L.R.A. 56, 61–62 (1986)). They argue, however, that the dress code contained in the instant Agreement is nonnegotiable—and therefore subject to disapproval by the agency head—because it pertains to internal security procedures which are protected from bargaining pursuant to § 7106(a). We disagree.

Employment matters may be classified into three groups: (i) matters that fall within the agency's duty to bargain, (ii) matters outside the agency's duty to bargain but within the permissible realm of collective bargaining, and (iii) matters beyond the lawful scope of bargaining. Numerous courts have held that the dress code for civilian technicians at national guard installations is a means for performing work within the meaning of § 7106(b)(1) and therefore a permissible subject of bargaining at the election of the agency. *American Fed'n of Gov't Employees v. FLRA,* 762 F.2d 183 (1st Cir.1985) (per curiam); *New York Council, Ass'n of Civilian Technicians v. FLRA,* 757 F.2d 502 (2d Cir.), *cert. denied,* 474 U.S. 846, 106 S.Ct. 137, 88 L.Ed.2d 113 (1985); *Ass'n of Civilian Technicians v. FLRA,* 780 F.2d 12 (7th Cir. 1985); *American Fed'n of Gov't Employees, Local 2986 v. FLRA,* 775 F.2d 1022 (9th Cir.1985); *National Ass'n of Gov't Employees, Locals R5–91, R5–107 & R5–120 v. FLRA,* 771 F.2d 1449 (11th Cir.1985) (per curiam); *see also American Fed'n of Gov't Employees v. FLRA,* 864 F.2d 178 (D.C.Cir. 1988) (same for bureau of prisons). While the agency is thus under no obligation to bargain about these dress codes, the agency may elect to negotiate subsection (b)(1) matters as long as this would not violate any other applicable law or regulation.

■ The Agency and the FLRA, as noted, advance the additional argument that because the matter of civilian attire pertains not only to a subsection (b)(1) matter but also affects management's enumerated powers under subsection (a)(1), it cannot be the subject of negotiation. As illustrated by our decision in *American Federation of Govern-*

---

1. The Federal Labor Relations Council—the predecessor body to the FLRA—was created by Ex- ecutive Order 11,491 "as the central authority to administer the program." *See id.* at 1164–65.

*ment Employees, Local 1923 v. FLRA,* 819 F.2d 306, 308 (D.C.Cir.1987), this interpretation gets the relationship between subsections (a) and (b) backwards:

> Taken alone, [subsection 7106(a)] would relieve an employer from any duty to bargain over union proposals whose incorporation in a collective bargaining agreement would affect the enumerated managerial rights. Subsection 7106(b) of the Act, however, lists certain kinds of proposals that would affect these managerial rights, yet remain proper subjects of collective bargaining.

We held in *Local 1923* that matters falling under subsection 7106(b)(2), *i.e.,* "procedures which management officials of the agency will observe," and subsection 7106(b)(3), *i.e.,* "appropriate arrangements for employees adversely affected by the exercise of any authority under this section by such management officials," invoke the "agency's *duty* to bargain." 819 F.2d at 308 (emphasis added). Section 7106, we held, makes clear that the duty to bargain over matters falling under subsections (b)(2) and (b)(3) exists "notwithstanding that implementation of the proposal would affect the enumerated managerial rights." *Id. See also American Fed'n of Gov't Employees, Local 2782 v. FLRA,* 702 F.2d 1183 (D.C.Cir.1983). This relationship between subsections (a) and (b) of § 7106 could not have been expressed more clearly in the language of the Act. The nonnegotiability of management rights enumerated in subsection (a) is expressly "[s]ubject to subsection (b)," and subsection (b) concomitantly provides that "[n]othing in this section shall preclude any agency and any labor organization from negotiating" matters enumerated in subsection (b). 5 U.S.C. § 7106(a) & (b). In that sense, we have already decided that § 7106(b) *is* indisputably an exception to § 7106(a).

We know of nothing supporting the conclusion that while matters negotiable under subsections (b)(2) and (b)(3) may pertain to subsection (a), subjects negotiable under subsection (b)(1) may not. Neither the FLRA nor the Agency have pointed to anything in the statute or legislative history that would legitimize so counter-intuitive a reading of the

statute. In addition to ignoring § 7106(a)'s self-proclaimed relationship to § 7106(b), the FLRA's reading would render parts—if not all—of subsection (b)(1) nugatory. Subsection (b)(1), for example, permits bargaining about "the numbers ... of employees ... assigned to any organizational subdivision, work project, or tour of duty," while subsection (a) enumerates management rights as including the right "to determine the ... number of employees ... [and] to assign work." According to the FLRA's interpretation, the number of employees and their assignment would fall beyond the permissible scope of bargaining, despite the explicit authority to bargain set out in subsection (b)(1). The Agency and the FLRA have not presented any reason to accept a logic which would effectively expunge significant passages from subsection (b)(1) of the Act. *See United States v. Menasche,* 348 U.S. 528, 538–39, 75 S.Ct. 513, 519–20, 99 L.Ed. 615 (1955) (applying principle of statutory construction "to give effect, if possible, to every clause and word of a statute" (internal quotes and citation omitted)). Therefore, we must reject outright the extraordinary twist on simple words proposed by the FLRA's reading of the Act.

### III. CONCLUSION

While a matter pertaining to subsection (b)(1) is ordinarily not within management's *duty* to bargain, it is not thrust beyond the scope of lawful bargaining simply because it also pertains to management powers enumerated in subsection (a). To be sure, as the FLRA points out, management generally does not waive its reserved rights by voluntarily entering into an agreement about them with a union. And nonnegotiability can ordinarily be asserted as a defense to a charge that the agency has violated the terms of an agreement, notwithstanding the agency's initial failure to reject the proposal. *See AFGE,* 778 F.2d at 853–54. But the matter involved here falls under both subsections (a) *and* (b)(1) of § 7106 and so is subject to negotiation at the election of the agency. Once an agreement pertaining to a permissible subject of negotiation is reached by local agency negotiators and a union, this election to negotiate is binding upon the agency. In

other words, the agreement cannot subsequently be deemed unlawful by the agency head simply because it pertains to a permissible—rather than mandatory—subject of negotiation. The Act could not be clearer on this point. Since Congress has spoken to the precise issue in question and commanded a result contrary to that arrived at by the FLRA, we grant the petition for review and reverse the FLRA's determination.[2] Of course, the FLRA is free to determine on remand whether the Agency's other asserted reason for disapproving the Agreement, *i.e.,* the existence of an agency-wide rule prescribing the wearing of a uniform, suffices to sustain the agency head's assertion that the dress code was nonnegotiable.

*So ordered.*

KAREN LeCRAFT HENDERSON, Circuit Judge, concurring:

Circuit precedent, particularly the holding in *American Fed'n of Gov't Employees v. FLRA,* 778 F.2d 850 (D.C.Cir.1985) ("*AFGE*"), leads me to concur, albeit reluctantly, in the decision to reverse and remand. Nevertheless, our holding sidesteps a significant if not dispositive issue, namely a correct and fair explanation of the relationship between the "head of the agency" language of 5 U.S.C. § 7114(c)(2) and the "at the election of the agency" language of 5 U.S.C. § 7106(b)(1) when the "agency" election is made by the Activity. The author of the majority opinion noted this very issue in *AFGE,* 778 F.2d at 853 n. 6 ("[w]e express no view, for example, on whether the head of the agency is bound when the agency's negotiators elect to negotiate an issue pursuant to § 7106(b).").

Although the majority maintains that the Act "could not be clearer on this point" and that "Congress has spoken to the precise issue in question," I think that we are once again avoiding the issue this court felt it was unnecessary to reach in *AFGE.*\* Granted the FLRA's order did not mention it either.

---

2. We do not read our opinion as having sidestepped the issue noted by our concurring colleague.

\* The decision in *American Fed'n of Gov't Employees, AFL–CIO, Local 1923 v. FLRA,* 819 F.2d 306

But, because we are remanding, the FLRA will presumably be free to give us the benefit of its expertise in reconciling the relevant statutory provisions in circumstances such as those presented to us by this petition for review. If it does so, perhaps its reading will not be given the short shift it is given today.

---

(D.C.Cir.1987), construing section 7106(b)(2) and section 7106(b)(3) does not necessarily dictate the result here because those provisions do not include the critical prefatory phrase "at the election of the agency."