EXPORTAL LTDA., Mario Fantuzzi, and Jesus Villasante, Petitioners,

v.

UNITED STATES of America and Clayton Yeutter, Secretary of Agriculture, Respondents.

No. 89–1068.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 26, 1990.

Decided April 13, 1990.

Walter H. Lion, New York City, for petitioners.

Raymond W. Fullerton, Asst. Gen. Counsel, Dept. of Agriculture, with whom James Michael Kelly, Associate Gen. Counsel, Margaret M. Breinholt, Deputy Asst. Gen. Counsel, and Ellen R. Hornstein, Dept. of Agriculture, Washington, D.C., were on the brief, for respondents.

Before WALD, Chief Judge, and MIKVA and EDWARDS, Circuit Judges.

Opinion for the Court filed by Circuit Judge EDWARDS.

HARRY T. EDWARDS, Circuit Judge:

In this case, petitioner, Exportal Ltda. ("Exportal"), a Chilean fruit producer, challenges a decision of the Secretary of Agriculture ("Secretary") declining to waive a bond requirement in connection with a reparation proceeding sought to be initiated by petitioner. Department of Agriculture ("DOA") regulations provide that the bond requirement "shall be waived" if a foreign complainant can show that its nation does not require a United States complainant to file a bond in a proceeding against a citizen of that nation. 7 C.F.R. § 47.6(b) (1989). Exportal's request for a waiver of the bond requirement was denied because, according to the Secretary, such waivers remain discretionary even when a foreign complainant makes the requisite showing pursuant to agency regulations. We find this decision to be flatly inconsistent with the plain terms of DOA's regulations. Accordingly, we reverse and remand for further proceedings.

As an initial matter, we hold that the Secretary's decision is a "final order" reviewable under the Administrative Orders Review Act, 28 U.S.C. § 2342(2) (1982). Second, we hold that the petitioner's challenge must be upheld because the Secretary's decision is contrary to the plain language of the agency's own regulations. Finally, we remand for further proceedings to allow the Secretary to address whether Exportal has shown that Chilean law satisfies the reciprocity requirement imposed by section 47.6(b).

## I. BACKGROUND

The Perishable Agricultural Commodities Act, 7 U.S.C. §§ 499a–499s (1988) ("PACA"), establishes a remedial scheme to protect agricultural producers from fraudulent practices by brokers. *See generally Harry Klein Produce v. Department of Agriculture*, 831 F.2d 403, 405 (2d Cir.1987). Under PACA, a producer aggrieved by such a practice may initiate a reparation proceeding by filing a formal complaint with the Secretary. *See* 7 U.S.C. § 499f(a), (c); 7 C.F.R. § 47.6. If the Secretary finds for the producer, an order is entered in favor of the producer awarding compensation for its damages. *See* 7 U.S.C. § 499g(a). Either party may appeal the Secretary's decision to federal district court, where the producer's claim is tried *de novo*. *See* 7 U.S.C. § 499g(c).

The prevailing party in a reparation proceeding under PACA can recover its costs and attorney fees. *See* 7 C.F.R. § 47.19(d) (1989). To secure these expenses, as well as any damages awardable on a counterclaim, a foreign producer may be obliged to

furnish a bond equal to double the amount of its claim. *See id.* § 499f(e). However, pursuant to authority delegated to the Secretary by PACA, *see id.*, DOA regulations state that the bond requirement is waived in the following circumstance:

> [T]he furnishing of a bond shall be waived if the complainant is a resident of a country which permits filing of a complaint by a resident of the United States against a citizen of that country without the furnishing of a bond.

7 C.F.R. § 47.6(b). Under both PACA and DOA regulations, a foreign complainant must either file a bond or obtain a waiver before the DOA can take "any formal action ... on [the producer's] complaint," 7 U.S.C. § 499f(e), including service of the complaint on the broker and docketing of the case for adjudication. *See* 7 C.F.R. §§ 47.6(b), (c), 47.10 (1989). The decision whether to grant a waiver request is made by the Secretary or a designated DOA staff member.

In August 1988, Exportal filed a complaint with the Secretary alleging that its United States broker had unlawfully withheld $182,000 due Exportal. Advised of PACA's foreign-producer bond requirement, Exportal petitioned the DOA for a waiver; in support of the petition, Exportal proffered an affidavit from a Chilean attorney attesting that Chile does not require United States citizens to furnish bonds before bringing civil actions against Chileans. In a one-page letter, the Chief of the PACA Branch of the DOA rejected Exportal's request, stating:

> the wording of [PACA] gives the Secretary ... discretion over whether to waive the bond requirement, even when the complainant's national court system allows claims by extranationals without supplying a bond.

Appendix 3. As a basis for the exercise of the Secretary's discretion in this case, the letter cited the need to secure a potential counterclaim by Exportal's broker. See id.

Rather than file a $364,000 bond, Exportal petitioned this court for review.[1] Exportal maintains that under 7 C.F.R. § 47.6(b) the Secretary has *no* discretion to deny a waiver *if* the foreign producer shows that its nation's legal system does not require United States citizens to furnish bonds. In addition to disputing this reading of the DOA's regulations, the Secretary argues that we are without jurisdiction to entertain Exportal's petition.

## II. ANALYSIS

### A. *Jurisdiction*

By its terms, the Administrative Orders Review Act plainly extends to a decision denying a waiver pursuant to 7 U.S.C. § 499f(e):

> the court of appeals ... has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of—
>
> .        .        .        .        .
>
> (2) *all* final orders of the Secretary of Agriculture made under chapters 9 and 20A of title 7, *except* orders issued under sections 210(e), 217a, and 499g(a) of title 7....

28 U.S.C. § 2342 (emphasis added).[2] The Secretary nonetheless contests jurisdiction on the ground that a decision to deny a waiver is not a "final order." Alternatively, the Secretary maintains that Exportal should have directed its petition to the district court, because that is the court with jurisdiction over appeals from the Secretary's reparation orders. *See* 7 U.S.C. § 499g(c). We disagree.

We engage in a "pragmatic" inquiry to determine whether an agency decision is a "final order" for purposes of the Administrative Orders Review Act. *See New York Shipping Ass'n v. FMC*, 854 F.2d 1338, 1351 (D.C.Cir.1988), *cert. denied*, — U.S. ——, 109 S.Ct. 866, 102 L.Ed.2d 990 (1989). The relevant questions are, first, "whether

---

**1.** When Exportal filed its petition, Peter Myers was Acting Secretary of Agriculture. Clayton Yeutter, the current Secretary of Agriculture, has been substituted pursuant to Federal Rule of Appellate Procedure 43(c)(1).

**2.** PACA comprises chapter 20A of title 7.

the process of administrative decisionmaking has reached a stage where judicial review will not disrupt the orderly process of adjudication"; and, second, "whether rights or obligations have been determined or legal consequences will flow from the agency decision." *Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic,* 400 U.S. 62, 71, 91 S.Ct. 203, 210, 27 L.Ed.2d 203 (1970); *accord New York Shipping Ass'n,* 854 F.2d at 1351.

■ There is no doubt that the process of administrative decisionmaking in this case has reached a stage where judicial review will not disrupt any adjudication under PACA. The Secretary contends that his waiver denial is not a final order because it is interlocutory in nature. However, this characterization ignores the special procedural mechanism by which the DOA decides a waiver request. Consistent with PACA, *see* 7 U.S.C. § 499f(e), DOA regulations provide that a foreign producer must obtain a waiver *before* the agency invokes *any* component of the adjudicatory procedures—from service of the complaint, to discovery, to a formal hearing—designed to resolve PACA claims on the merits. *See* 7 C.F.R. § 47.6(b). Whether a foreign producer is entitled to a waiver is determined not by an administrative law judge, but by the Secretary or designated DOA staff. In effect, DOA regulations establish a wholly independent proceeding to decide whether a foreign producer may prosecute a PACA reparation claim without filing a bond. Because DOA procedures make no provision for the re-examination of this decision, and because the waiver determination occurs completely outside the context of any PACA adjudication, judicial review of the Secretary's decision "will not disrupt the orderly process of [any] adjudication" before the agency. *Port of Boston Marine Terminal Ass'n,* 400 U.S. at 71, 91 S.Ct. at 209.

The denial of a waiver also has clear legal consequences for Exportal. If Exportal is unable or unwilling to pay the bond, it must forego its right to avail itself of the administrative remedy contemplated by PACA. If it does furnish the bond, it must forego its qualified right, recognized by PACA and DOA regulations, not to lose the use of $364,000 during the pendency of the reparation proceeding—a deprivation that cannot be meaningfully remedied *on appeal* from a reparations order. We therefore have no difficulty concluding that the Secretary's decision to deny a waiver is a "final" order for purposes of judicial review.[3]

■ We also reject the Secretary's contention that the district court has initial appellate jurisdiction over the Secretary's decision. The Secretary bases this argument on *Florida Light & Power Co. v. Lorion,* 470 U.S. 729, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985). The issue in that case was whether an agency decision not to *initiate* a license revocation proceeding came within the scope of a statute providing for court of appeals jurisdiction, under the Administrative Orders Review Act, over final orders in "licensing proceedings." The Court answered this question affirmatively, noting that, "[i]n the absence of specific evidence of contrary congressional intent, ... orders resolving issues preliminary or ancillary to the core issue in a proceeding should be reviewed in the same forum as the final order resolving the core issue." Id. at 743, 105 S.Ct. at 1606. The Secretary maintains that because the district court has jurisdiction over the "core" issue of whether the Secretary has properly ordered reparations against a broker under PACA, the district court should also have jurisdiction over the "preliminary" issue of whether a foreign producer is entitled to a waiver of the bond requirement.

The problem with the Secretary's analysis is that Congress *has* furnished "specific

---

**3.** The Secretary also suggests that its denial of Exportal's waiver is not a final order because his ruling was not made after a hearing. However, the absence of a hearing is not an impediment to review under the Administrative Orders Review Act "when a hearing is not required by law and it appears from the pleadings and affidavits filed by the parties that no genuine issue of material fact is presented." 28 U.S.C. § 2347(b)(2) (1982). Such is the case here.

evidence" of its intent that the court of appeals exercise jurisdiction over final orders disposing of "preliminary" issues in PACA reparation proceedings. The Administrative Orders Review Act expressly provides for direct (and exclusive) review in the court of appeals of *every* final order issued pursuant to PACA *except* for reparation orders. *See* 28 U.S.C. § 2342(2).[4]

■ This division of appellate responsibility is perfectly understandable. An appeal from a reparation order is not a genuine "review" action but rather a trial *de novo, see* 7 U.S.C. § 499g(c), a proceeding possible *only* in district court. The district court, however, has no special competence to review nonreparation orders for legal error. Direct review of these orders in the court of appeals reflects the Administrative Orders Review Act's general objective to eliminate the "duplication of effort" attendant upon successive appeals in the district court and the court of appeals based on the same Administrative Procedure Act ("APA") standards of review. *Lorion,* 470 U.S. at 744, 105 S.Ct. at 1607. Indeed, if we needed to recur to rules of statutory construction to decipher Congress' intention on where appellate jurisdiction lies in this case, we would follow the presumption *against* inferring "that Congress intended to depart from the sound policy of placing initial *APA review* in the courts of appeals." *Id.* at 745, 105 S.Ct. at 1607 (emphasis added).[5]

B. *The Denial of Exportal's Waiver Request*

1. The Secretary's Claim of Discretion under Section 47.6(b)

■ DOA regulations speak in categorical terms:

the furnishing of a bond *shall be waived* if the complainant is a resident of a country which permits filing of a complaint by a resident of the United States against a citizen of that country without the furnishing of a bond.

7 C.F.R. § 47.6(b) (emphasis added). Despite these clear terms, the Secretary contends that he retains discretion under the regulations to deny a waiver even when a foreign producer can make the showing of reciprocity that section 47.6(b) requires. Noting that PACA provides merely that "the Secretary shall have the *authority* to waive the furnishing of a bond" upon the requisite showing of reciprocity, 7 U.S.C. § 499f(e) (emphasis added), the Secretary maintains that section 47.6(b) should be construed to restate this permissive grant of statutory authority. Once again, we are constrained to disagree with the Secretary's analysis.

The scope of the waiver authority delegated to the Secretary by 7 U.S.C. § 499f(e) is largely beside the point. For, even assuming that the Secretary *could* adopt a rule preserving his discretion to deny a waiver to a foreign producer who shows that its nation does not impose a bond requirement, the fact remains that the Secretary has adopted *section 47.6(b),* under which the Secretary's discretion has been strictly limited by the plain terms of the regulation. "It is axiomatic that an agency must adhere to its own regulations...." *Brock v. Cathedral Bluffs Shale Oil Co.,* 796 F.2d 533, 536 (D.C.Cir. 1986) (Scalia, J.); *see Accardi v. Shaughnessy,* 347 U.S. 260, 265–67, 74 S.Ct. 499, 502–03, 98 L.Ed. 681 (1954). The issue, then, is whether the Secretary has faithfully applied section 47.6(b) in determining that it could reject Exportal's waiver re-

---

4. Of course, not all "preliminary" determinations are "final orders" for purposes of the Administrative Orders Review Act. When they are, however, initial jurisdiction resides in the court of appeals.

5. We also reject the Secretary's suggestion that we should dismiss Exportal's petition on grounds of ripeness or exhaustion of remedies. Exportal's challenge is ripe because the Secretary has applied section 47.6(b) to Exportal, and because no further agency action is necessary to

make the Secretary's decision "fit" for judicial resolution. *See Abbott Labs. v. Gardner,* 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967). The exhaustion of remedies doctrine poses no bar because DOA regulations afford Exportal no avenue for seeking agency review of the Secretary's decision to deny a waiver. *See Myers v. Bethlehem Corp.,* 303 U.S. 41, 50–51, 58 S.Ct. 459, 463–64, 82 L.Ed. 638 (1938).

quest notwithstanding its showing of reciprocity.

This is a question of interpretation. It is well established that a reviewing court owes deference to an agency's construction of its own regulations. *See, e.g., Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965). But it is equally well established that this deference is due *"only* when the plain meaning of the rule itself is doubtful or ambiguous.... Deference to agency interpretations is not in order if the rule's meaning is clear on its face." *Pfizer, Inc. v. Heckler*, 735 F.2d 1502, 1509 (D.C.Cir.1984); *see also Udall*, 380 U.S. at 16, 85 S.Ct. at 801.

Courts' reliance on the "plain meaning" rule in this setting is not a product of some fetishistic attraction to legal "formalism." In order to infuse a measure of public accountability into administrative practices, the APA mandates that agencies provide interested parties notice and an opportunity for comment before promulgating rules of general applicability. *See* 5 U.S.C. § 553(b), (c) (1988). *See generally American Bus Ass'n v. United States*, 627 F.2d 525, 528 (D.C.Cir.1980). This right to participate in the rulemaking process can be meaningfully exercised, however, only if the public can understand proposed rules as meaning what they *appear* to say. Moreover, if permitted to adopt unforeseen interpretations, agencies could *constructively amend* their regulations while evading their duty to engage in notice and comment procedures. As applied to agency regulations, then, the plain meaning doctrine is an interpretive norm essential to perfecting the scheme of administrative governance established by the APA. *Cf.* Sunstein, *Interpreting Statutes in the Regulatory State*, 103 HARV.L.REV. 405, 412 (1989) (arguing that interpretation should be guided by "principles that improve the performance of modern government").

In this case, the plain meaning of the DOA's regulations is dispositive. Section 47.6(b) states that the bond requirement *"shall* be waived" if the foreign producer makes the requisite showing of reciprocity.

" 'Shall' is a term of legal significance, in that it is mandatory or imperative, not merely precatory." *Conoco, Inc. v. Norwest Bank Mason City*, 767 F.2d 470, 471 (8th Cir.1985); *see, e.g., Continental Airlines, Inc. v. Department of Transp.*, 856 F.2d 209, 216 (D.C.Cir.1988) (mandatory time limits for agency action); *Weil v. Markowitz*, 829 F.2d 166, 171 (D.C.Cir.1987) (mandatory sanctions for attorney misconduct); *Association of American R.R. v. Costle*, 562 F.2d 1310, 1312 (D.C.Cir.1977) (mandatory rulemaking directive). Nothing in the text of section 47.6(b) puts a reader on notice that the regulation is using "shall" in an unorthodox manner.

Conceding that his interpretation of section 47.6(b) is "anomalous," the Secretary nonetheless resists the conclusion that his reading is foreclosed by the plain meaning rule. The Secretary notes that although the ordinary connotation of "shall" is "must," courts construing statutes have sometimes discerned in the legislative history or structure of the statute an intention to depart from the plain meaning of this term. *See, e.g., Buckley v. Valeo*, 519 F.2d 821, 893 n. 191 (D.C.Cir.1975), *aff'd in part and rev'd in part on other grounds*, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976). According to the Secretary, we should defer to his conclusion that the DOA intended "shall" to mean "may" when it promulgated section 47.6(b).

We reject this contention. As we have mentioned, we can discern no evidence that the DOA actually *did* intend to use "shall" to mean "may" in section 47.6(b). But even more fundamentally, we disagree with the Secretary's suggestion that we should read section 47.6(b) *as if it were a statute.* We might be willing, in extraordinary circumstances, to entertain the suggestion that a legislature intended something different from what a statute appears plainly to say. *See, e.g., Consolidated Rail Corp. v. United States*, 896 F.2d 574, 578 (D.C. Cir.1990); *Belland v. Pension Benefit Guar. Corp.*, 726 F.2d 839, 844 n. 6 (D.C. Cir.), *cert. denied*, 469 U.S. 880, 105 S.Ct. 245, 83 L.Ed.2d 183 (1984). But legislatures are not constrained by procedural requirements akin to those in the APA. To

protect the integrity of these procedures, we cannot permit an agency to rely on its unexpressed intentions to trump the ordinary import of its regulatory language. Because the DOA has expressed itself in language that has a plain meaning, we look no further than the text of its rule.

In sum, section 47.6(b)'s directive that "the furnishing of a bond *shall be waived*" unequivocally conveys that the Secretary *must* grant a waiver when the condition of reciprocity is met. Unless and until this language is amended, the DOA must abide by it.

### 2. *Reciprocity Under Chilean Law*

As an alternative ground for upholding the Secretary's denial of Exportal's waiver request, counsel for the Secretary suggests that Exportal in fact failed to make the requisite showing of reciprocity demanded by section 47.6(b). According to counsel, a foreign producer must demonstrate not merely that its nation's legal system does not require United States citizens to file bonds in legal proceedings, but also that the producer's nation affords United States producers an administrative remedy analogous to PACA. Chile, the Secretary's counsel maintains, provides no such remedy.

We cannot uphold the Secretary's order on this basis. The DOA's letter denying Exportal's waiver request offered only one ground for this decision: the Secretary's alleged discretion to deny a waiver in all cases. The suggestion that Exportal failed to demonstrate reciprocity in Chilean law is merely "appellate counsel's post hoc rationalization[ ] for agency action." *Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Automobile Ins. Co.*, 463 U.S. 29, 50, 103 S.Ct. 2856, 2870, 77 L.Ed.2d 443 (1983).

On the record before us, we are in no position to assess any claims on the state of Chilean law. Because the Secretary disposed of Exportal's waiver request pursuant to an asserted exercise of discretion, the DOA had no occasion to address the merits of Exportal's showing of reciprocity. And although we do not discern in either section 47.6(b) or 7 U.S.C. § 499f(e) a requirement that the nation of a foreign complainant have a remedial scheme that *precisely* mirrors PACA, we will leave it to the Secretary to address this question in the first instance. Consequently, subject to appropriate review by this court, the Secretary remains free on remand to determine whether Chilean law satisfies the reciprocity requirement.

### III. CONCLUSION

We grant Exportal's petition for review. The determination to deny waiver of a bond prior to initiation of a PACA reparation proceeding is a "final order" under the Administrative Orders Review Act. By directing that "the furnishing of a bond shall be waived" if the nation of a foreign producer does not require United States complainants to file a bond, section 47.6(b) leaves the Secretary with *no* discretion to deny a waiver when the requisite condition is met. The Secretary remains free on remand, however, to address whether Exportal has shown that Chilean law satisfies the reciprocity requirement imposed by section 47.6(b).

*It is so ordered.*