The UNITED STATES of America, Plaintiff–Appellant,

v.

The COCOA BERKAU, INCORPORATED, and Washington International Insurance Company, Defendants–Appellees.

No. 92–1390.

United States Court of Appeals, Federal Circuit.

March 30, 1993.

Susan Burnett Mansfield, Sr. Trial Counsel, Dept. of Justice, New York City, argued, for plaintiff-appellant. With her on the brief, were Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director, and Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office.

Ronald W. Gerdes, Sandler, Travis & Rosenberg, P.A., Washington, DC, argued, for defendants-appellees. Gilbert Lee Sandler, Sandler, Travis & Rosenberg, P.A., Miami, FL, was on the brief, for defendants-appellees.

Wayne Jarvis and Michael G. Hodes, Hodes & Pilon, Chicago, IL, were on the brief, for amicus curiae Old Republic Ins. Co.

Before ARCHER, LOURIE and SCHALL, Circuit Judges.

LOURIE, Circuit Judge.

The United States appeals from the judgment of the United States Court of International Trade granting the motion of Washington International Insurance Company to dismiss the government's action to recover liquidated damages as time-barred under 28 U.S.C. § 2415(a) (1988). *United States v. The Cocoa Berkau, Inc.*, 789 F.Supp. 1160 (Ct. Int'l Trade 1992). Because the government filed its complaint more than six years after its right of action accrued and the statute of limitations was not tolled by any administrative proceeding required by contract or by law, we affirm.

### BACKGROUND

On March 6, 1984, The Cocoa Berkau, Inc., as principal, and Washington, as surety, executed and delivered to the U.S. Customs Service a single entry bond in the amount of $111,500 to secure the immediate delivery of sweet chocolate to be imported from Brazil. Paragraph 4 of the entry bond required Cocoa Berkau to redeliver, upon proper demand by Customs, any and all merchandise found not to comply with the law and regulations governing importation of the merchandise into the United States. It further provided that upon default of redelivery, Cocoa Berkau (and Washington, as its surety) would be liable for liquidated damages as may be demanded by Customs, not to exceed the face amount of the bond.

On March 26, 1984, Cocoa Berkau entered 500 metric tons of sweet chocolate under item 156.20, Tariff Schedules of the United States (TSUS). An entry summary for consumption was submitted to Customs and it was eventually accepted. At the time of entry, a sample of the imported merchandise was taken by Customs for laboratory testing. Customs' analysis of the sample revealed that the imported merchandise contained milk solids, properly classified under item 156.30, TSUS. Merchandise so classified was subject to an import quota under item 950.16, TSUS.

Consequently, on January 31, 1985, Customs issued a notice ordering Cocoa Berkau to redeliver the imported merchandise to Customs within 30 days from the date of the notice. The notice was mailed to Cocoa Berkau at its address of record. A second notice to redeliver, dated February 11, 1985, was mailed to Cocoa Berkau at a new address. Cocoa Berkau subsequently advised Customs that the imported merchandise could not be redelivered to Customs because it had already been sold. The imported merchandise was never redelivered to Customs.

Customs determined that Cocoa Berkau's failure to redeliver the imported merchandise upon demand constituted a breach of the bond. On June 26, 1985, Customs demanded payment from Cocoa Berkau of liquidated damages in the amount of $1,114,812 to be paid within 60 days. Cocoa Berkau did not pay these damages.[1]

On March 18, 1988, Customs liquidated the imported merchandise under item 156.-20, TSUS, under which the merchandise was originally entered. On November 30, 1990, formal demand for $111,500 in liquidated damages was made on Washington for Cocoa Berkau's breach of the entry bond, to be paid within 30 days. That amount represented the face amount of the bond which Washington executed as bond surety. On December 28, 1990, Washington petitioned for mitigation relief and that petition was denied by Customs on July 19, 1991.

On August 22, 1991, the government filed suit against Cocoa Berkau and Washington in the U.S. Court of International Trade to recover the $111,500, plus prejudgment and post-judgment interest and costs. Washington moved for dismissal on the ground that the government failed to timely file its complaint within the six-year limitations period of 28 U.S.C. § 2415(a). Washington argued that the government's right of action accrued no later than March 13, 1985, when the bond was breached by the principal. The government claimed that its right of action accrued on December 30, 1990, when the surety defaulted on its obligation under the bond.

The trial court granted Washington's motion to dismiss. The trial court determined that in an action for breach of an entry bond, the six-year limitations period of 28 U.S.C. § 2415(a) begins to run on the importer's breach of its bond, which in the instant case occurred no later than March 13, 1985, when Cocoa Berkau failed to redeliver the imported merchandise within 30 days of Customs' demand for redelivery.

Because the government's complaint was filed on August 22, 1991, more than six years after the government's right of action accrued, the trial court concluded that the action was time-barred under section 2415(a).

The trial court also rejected the government's alternative argument that the mitigation proceeding initiated by Washington tolled the limitations period until July 19, 1991, when Customs rendered a final decision denying Washington's request for relief. The trial court determined that the limitations period under section 2415(a) is tolled only by mandatory administrative proceedings. It concluded that the mitigation proceeding at issue was not required by law or by the entry bond, but was "merely a permissive administrative proceeding instigated by [Washington]" which did not operate to toll the limitations period.

### DISCUSSION

 Whether the trial court properly granted the motion to dismiss is a question of law that we review *de novo*. *See Rocovich v. United States*, 933 F.2d 991, 993 (Fed.Cir.1991). In the instant case, that inquiry turns on the proper interpretation of the governing statute, which is also a legal question that we review *de novo*. *See Guess? Inc. v. United States*, 944 F.2d 855, 857 (Fed.Cir.1991). In reviewing the propriety of the dismissal, we must consider the facts alleged in the complaint to be correct. *The Catawba Indian Tribe of S.C. v. United States*, 982 F.2d 1564, 1568–69 (Fed.Cir.1993).

### I. Accrual of Right of Action

The applicable statute of limitations, 28 U.S.C. § 2415(a), provides that an action brought by the government for money damages on a contract must be filed "within six years after the right of action accrues or within one year after final deci-

---

**1.** The $1,114,812 assessed by Customs represented the entered value of the imported merchandise. In response to the assessment, Cocoa Berkau filed a petition for relief from Customs' demand. In a decision dated June 12, 1986,

Customs advised Cocoa Berkau that the claim for liquidated damages would be mitigated to $557,406. Cocoa Berkau then filed a supplemental petition for relief, which was denied on March 12, 1987.

sions have been rendered in applicable administrative proceedings required by contract or by law, whichever is later." In the instant case, the issue whether section 2415(a) applies to bar the government's suit to recover liquidated damages for breach of the entry bond turns on the date on which the government's right of action accrued.

■ The law is well settled that, as a general rule, a claim does not accrue until all events necessary to fix the liability of a defendant have occurred.[2] *The Catawba Indian Tribe,* 982 F.2d at 1570; *United States v. Commodities Export Co.,* 972 F.2d 1266, 1270 (Fed.Cir.1992) (" '[A] cause of action accrues when all events necessary to state a claim have occurred.' ") (quoting *Chevron U.S.A., Inc. v. United States,* 923 F.2d 830, 834 (Fed.Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 167, 116 L.Ed.2d 131 (1991)), *cert. denied,* —— U.S. ——, 113 S.Ct. 1256, 122 L.Ed.2d 654 (1993). With respect to a claim arising from a bond, it is equally well settled that the date of accrual occurs at the time of the breach of the bond. *See United States v. Reul,* 959 F.2d 1572, 1576 (Fed.Cir.1992). The parties do not quarrel with these established legal principles. The critical issue on appeal is which event, the default of redelivery by the bond principal or the default of payment of liquidated damages by the bond surety, constituted the breach of the bond which fixed liability for purposes of triggering the statute of limitations.

The government argues that the trial court erred in determining that the government's right of action accrued when the bond principal failed to redeliver the imported merchandise to Customs upon demand. The government characterizes its suit as one against the bond surety to recover liquidated damages. Thus, it claims that its right of action did not accrue until Washington breached the bond

by failing to pay liquidated damages within 30 days of the November 30, 1990 notice demanding payment. Because the action was commenced on August 22, 1991, within six years of that date, the government maintains that its complaint was timely filed. We disagree.

■ In order to determine when the entry bond was breached, we look to the language of the bond stipulating the relevant obligations of the bond principal and its surety. The government's action for liquidated damages arose from an alleged breach of paragraph 4 of the entry bond. That provision required, *inter alia,* that the

principal shall redeliver or cause to be redelivered to [Customs], on demand ... any and all merchandise found not to comply with law and regulations governing its admission into the commerce of the United States ... or in default of redelivery after a proper demand ... the principal [or surety] shall pay to [Customs] such amounts as liquidated damages as may be demanded by [Customs.]

Thus, the entry bond placed an obligation on the bond principal to redeliver the imported merchandise upon a proper demand by Customs. The bond was breached, and thus the government's right of action accrued, when the principal failed to redeliver upon proper demand, not when the surety failed to pay liquidated damages. This interpretation of paragraph 4 is controlled by *United States v. Reul,* 959 F.2d 1572 (Fed. Cir.1992), in which the identical bond provision was at issue. In *Reul,* we determined that the default of redelivery by the bond principal constituted a breach of the bond, at which point a suit for the consequences of such default accrued for purposes of 28 U.S.C. § 2415(a). *Id.* at 1576.

Contrary to the assertion of the government, the entry bond did not expressly require Customs to demand payment of

2. This general rule of accrual applies whether the language of the statute of limitations speaks of a "right of action," *see, e.g.,* 28 U.S.C. §§ 2401, 2415(a) (1988), or of a "claim," *see, e.g.,* 28 U.S.C. § 2501 (1988). Thus, we reject the government's argument that the date that its "right of action" accrued under section 2415(a) is different from the date its "cause of action" accrued. *See United States v. Commodities Export Co.,* 972 F.2d 1266, 1270–71 (Fed.Cir.1992) (terms "cause of action" and "right of action" used interchangeably), *cert. denied,* —— U.S. ——, 113 S.Ct. 1256, 122 L.Ed.2d 654 (1993).

liquidated damages from the surety before a suit to recover such damages could be instituted. Absent an agreement between the parties, the surety incurs derivative liability when the principal breaches the bond. *See United States v. Commodities Export Co.*, 972 F.2d at 1271 n. 2. In the instant case, the bond merely stipulated that upon a "default of redelivery" by the principal, the principal (and its surety) would be liable for liquidated damages "as may be demanded" by Customs. Washington's duty as bond surety to pay liquidated damages arose as a consequence of the default of redelivery by the principal, not on a demand for the damages by the government. The demand made by Customs upon the surety was merely a procedural step for obtaining the damages and did not in itself create liability. *See* 19 C.F.R. § 172.1(a) (1992) ("The sureties on such bond shall also be advised in writing, at the same time as the principal, of the liability for liquidated damages incurred by the principal.").

Furthermore, in the absence of an express agreement between the parties, to accept the government's interpretation that its right of action accrues only when demand for liquidated damages is made on the surety would subvert the purpose of the statute of limitations, which is intended to ensure that actions are brought in a timely fashion, before they become stale. *See* S.Rep. No. 1328, 89th Cong., 2d Sess., *reprinted in* 1966 U.S.C.C.A.N. 2502, 2503. As we recognized in *Commodities Export*, that purpose is

> not served by allowing the Government to unilaterally postpone accrual of a cause of action. A private corporation suing the Government may not stall the commencement of the statute of limitations merely with in-house proceedings which precede any lawsuit. Similarly, the Government may not indefinitely postpone the running of the statute merely by taking the steps any prudent litigant would take before bringing a lawsuit.

972 F.2d at 1271 n. 3. Thus, we cannot "permit a single party to postpone unilaterally and indefinitely the running of the statute of limitations." *Id.* at 1271. The accrual of a right of action should occur upon default by a liable party, not when a creditor takes steps to procure performance.

In support of its position that its right of action accrued when the surety failed to pay upon demand, the government relies on our holding in *Reul* that no prejudgment interest on a principal's debt arising from its breach of a bond runs against a surety unless requisite notice and demand for payment is first made on the surety. 959 F.2d at 1581. The government's reliance on *Reul*, however, is inapposite because the question concerning when prejudgment interest begins to run against the surety is not at issue here. Nothing in *Reul*'s discussion regarding prejudgment interest contradicts our interpretation of the bond provision at issue. The date of accrual of interest does not necessarily govern the date of accrual of a right of action; one may be liable for a debt before being liable for interest.

We hold that the failure of the bond principal to redeliver the imported merchandise upon demand by Customs constituted a breach of its obligation under the entry bond; it thus was the triggering event which commenced the running of the statute of limitations. In the instant case, that breach occurred no later than March 13, 1985, 30 days after Cocoa Berkau failed to redeliver the imported merchandise to Customs upon demand. Because the government did not file its complaint within six years thereafter, it was barred under the statute of limitations.

## II. Tolling by Administrative Proceedings

■ Alternatively, the government contends that even if the complaint were not filed within six years after its right of action accrued, its suit was still timely because it was filed within one year after a final decision was rendered by Customs denying Washington's request for administrative relief. Section 2415(a) provides that the government's suit for money damages on a contract must be filed within six years after the right of action accrues or "within

one year after final decisions have been rendered in applicable administrative proceedings *required by contract or by law,* whichever is later." 28 U.S.C. § 2415(a) (emphasis added).

The government claims that on December 30, 1990, Washington petitioned for relief from the demand for liquidated damages under 19 U.S.C. § 1623(c) (1988) and that Customs denied this petition on July 19, 1991.[3] Because this suit was filed within a year of that decision, the government argues that it was timely filed under the "tolling provision" of section 2415(a). We disagree. It is undisputed that the entry bond did not require Washington to pursue administrative relief before the government could file an action for liquidated damages. Nor did the bond provide any procedure for dispute resolution which could be considered a condition precedent to bringing suit. Thus, the mitigation proceedings initiated by Washington were not "required by contract." As is discussed below, neither were they "required by law."

The government argues that although the decision to pursue mitigation remedies under section 1623(c) was completely voluntary on the part of the surety,[4] the government was nevertheless required to allow the surety to pursue those remedies. Once the surety elected to do so, the government claims that it was barred from recovering on its claim through a civil action until the mitigation proceedings were concluded. That argument, however, is not supported by the statute.

First, we observe that nothing in either the express language or the legislative history of section 1623(c) indicates that Congress intended that a bond surety be required to file a petition for mitigation or that such a petition must be filed before the government can bring suit to recover liquidated damages. Section 1623(c) provides in pertinent part that

[t]he Secretary of the Treasury *may* authorize the cancellation of any bond provided for in this section, or of any charge that may have been made against such bond, in the event of a breach of any condition of the bond, upon the payment of such lesser amount or penalty or upon such other terms and conditions as he may deem sufficient.

19 U.S.C. § 1623(c) (1988) (emphasis added). From its permissive terms it is clear that the determination whether to authorize cancellation of a bond under section 1623(c) falls within the discretion of the Secretary of the Treasury. *See also* 19 C.F.R. § 172.21 (1992) ("[Customs] may cancel any claim for liquidated damages ... [it] shall deem appropriate...."). That the Secretary was somehow "required" to consider whether to exercise his discretionary authority once the surety petitioned for mitigation relief does not establish that the section 1623(c) proceeding was one "required by law" within the meaning of 28 U.S.C. § 2415(a).

Congress, in enacting the statute of limitations, explained that

[the tolling] provision, which has the effect of tolling the running of the statute of limitations during mandatory administrative proceedings, is necessary because of the great number and variety of such proceedings made possible by current statutes. An administrative proceeding ordinarily consumes a considerable period of time and ... the [statute] would permit the Government a year after the final administrative decision in which to present its case for judicial determination. An example of such an administrative proceeding are those which involve

---

**3.** Washington disputes whether its December 28, 1990 letter to Customs can be considered a petition for mitigation. For purposes of this opinion we will consider it as such. Although the trial court cited 19 U.S.C. § 1618 (1988) as the basis for relief, the parties agree that 19 U.S.C. § 1623(c) is the appropriate authority. Thus, we do not reach the question whether a proceeding under section 1618 is one "required

by contract or by law" within the meaning of 28 U.S.C. § 2415(a).

**4.** *See, e.g.,* 19 C.F.R. § 172.1(b) (1992) ("The notice [for liquidated damages] shall also inform the principal and his sureties on the bond that application *may* be made for relief under [19 U.S.C. § 1623(c) ]....") (emphasis added).

appeals under the "disputes" clause of Government contracts.

S.Rep. No. 1328, 89th Cong., 2d Sess. (1966), *reprinted in* 1966 U.S.C.C.A.N. 2502, 2504. Hence, Congress contemplated that certain types of mandatory administrative proceedings could reasonably be expected to consume a substantial portion of the six-year limitations period, and it thus allowed for the tolling of section 2415(a) in order to accommodate this circumstance.

Congress specifically identified appeals under the "disputes" clause of government contracts as illustrative of the type of administrative proceedings that may toll the limitations period. At the time of the enactment of section 2415(a), disputes clauses generally required that "all disputes concerning a question of fact arising under this contract" be decided by the contracting officer. Such disputes clauses typically delineated a procedure for administrative review of the contracting officer's decision, whereby

> [a]ppeals from the decision of the contracting officer [were] characteristically heard by a board or committee designated by the head of the contracting department or agency. Should the contractor be dissatisfied with the administrative decision ... [he could] bring a Tucker Act suit for breach of contract in the Court of Claims or the District Court, 28 U.S.C. § 1346(a)(2) (1964 ed.), the finality accorded administrative fact finding by the disputes clause [being] limited by the provisions of the Wunderlich Act of 1954....

*United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 399, 86 S.Ct. 1545, 1548, 16 L.Ed.2d 642 (1966). The appeals procedure outlined by the disputes clauses also provided that "the Contractor shall be afforded an opportunity to be heard and to offer evidence in support of his appeal." *See, e.g., United States v. Ulvedal,* 372 F.2d 31, 32 n. 1 (8th Cir.1967). Moreover, the contractor was required to exhaust his administrative appeal right as provided under the disputes clauses before bringing suit on a claim arising under the contract. *See United States v. Joseph A. Holpuch*

*Co.,* 328 U.S. 234, 239–40, 66 S.Ct. 1000, 90 L.Ed. 1192 (1946).

The extensive administrative review procedures set out in pre–1978 disputes clauses stand in marked contrast to the discretionary and summary nature of mitigation proceedings under 19 U.S.C. § 1623(c). A party seeking mitigation relief is offered none of the procedural protections which were part of disputes clause appeals when section 2415(a) was enacted. Although a party may file an administrative appeal from a decision denying mitigation relief, such appeals are based only upon written submissions and do not provide for a hearing of any kind. *See* 19 C.F.R. § 172.33 (1992). Mitigation proceedings pursuant to section 1623(c) are not analogous to the formal and time-consuming administrative proceedings which Congress permitted to toll the statute of limitations in the government contract setting.

We hold that the surety's mitigation proceeding under 19 U.S.C. § 1623(c) was not an "administrative proceeding required by contract or by law" within the meaning of 28 U.S.C. § 2415(a); it thus did not toll the running of the limitations period.

## CONCLUSION

Because the government's complaint seeking liquidated damages for breach of an entry bond was filed more than six years after its right of action accrued and because the surety's mitigation proceeding did not toll the statute of limitations, the trial court's judgment dismissing the government's action is affirmed.

**AFFIRMED.**