UNITED STATES of America, Plaintiff,

v.

INSURANCE COMPANY OF NORTH AMERICA, Defendant.

Civ. A. No. 93–2660 (JHG).

United States District Court, District of Columbia.

Oct. 12, 1994.

Judgment filed March 24, 1995.

John G. Interrante, U.S. Dept. of Justice, Civ. Div., Washington, DC, for plaintiff.

William Joseph Virgulak, Jr., Doherty, Sheridan & Grimaldi, Fairfax, VA, for defendant.

## MEMORANDUM OPINION AND ORDER

JOYCE HENS GREEN, District Judge.

Plaintiff United States of America ("U.S." or "the government") initiated this action against defendant, Insurance Company of North America ("INA") pursuant to the Federal Coal Mine Health and Safety Act of 1969, as amended ("the Coal Act"), codified at 30 U.S.C. § 801 et seq. Plaintiff seeks recovery on two bonds which defendant provided to Kaiser Steel Corporation ("Kaiser") to insure payments to miners qualifying for black lung benefits under the Coal Act. Presently pending are the parties' cross-motions for summary judgment. For the reasons expressed below, plaintiff's motion is granted in part and defendant's motion is denied.

### I. Background

Plaintiff United States brought this action to recover on two indemnity bonds entered into by Kaiser as Principal and INA as Surety to secure Kaiser's obligations under the Coal Act. In 1973, Kaiser was authorized by the Secretary of Labor to act as a self-insured coal mine operator pursuant to § 423 of the Coal Act, 30 U.S.C. § 933. Section 933 and its corresponding regulations require coal mine operators who elect to self insure to secure the payment of benefits for which they are liable "in the form of either an indemnity bond or negotiable securities." 20 C.F.R. § 726.101. Kaiser elected to fulfill its obligations by obtaining and filing the indemnity bonds at issue in this case.[1]

1. Two bonds are at issue here. Count I of plaintiff's complaint concerns bond number K01386670 in the sum of $3,304,000. That bond was in effect from May 1, 1982 until its cancellation effective May 20, 1984. Count II concerns bond number M853072 in the sum of $684,750. That bond took effect on November 2, 1973; its date of cancellation, if any, is unclear. Plaintiff has moved for summary judgment only as to

Kaiser filed for bankruptcy in February 1987 and stopped making benefit payments to eligible claimants. On June 3, 1987, the Secretary of Labor made a written demand to INA, requesting that INA make payments in accordance with its obligations under indemnity bond number K01386670. INA responded by offering to make payments to two claimants whose claims were made during the two year period that the bond was in effect. INA disputed its liability for payments to the other benefit recipients, arguing that INA's liability was limited to those individuals whose claims were filed during the two-year period of the bond in question.

In May 1993, the Secretary of Labor demanded that INA pay to the government the full value of Bond No. K01388670, totalling $3,304,000. The Secretary determined that the full value of the bond was needed to cover all obligations under the bond, namely, lifetime benefit payments to 37 claimants. INA refused to pay, and this suit ensued.

## II. *Discussion*

Summary judgment is appropriate when there is "no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "The inquiry performed is the threshold inquiry of determining whether there is a need for trial—whether, in other words, there are any genuine issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 106 S.Ct. at 2519. At the same time, however, Rule 56 places a burden on the nonmoving party to "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett,*

477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

The Court finds that no dispute of material fact exists in this case and liability can appropriately be determined through summary judgment. The only dispute other than the scope of INA's liability concerns the amount of damages to which the plaintiff is entitled, a question which the Court defers pending further proceedings in this case.

### A. *Statute of Limitations*

In its cross-motion for summary judgment, defendant INA urges the Court to find that the United States' claims are time barred. The parties agree that 28 U.S.C. § 2415(a) sets the relevant statute of limitations for this case—six years after the right of action accrues. The critical issue thus becomes, at what point did the government's right of action accrue?

INA argues that the triggering date for the statute of limitations is February 13, 1987, the date on which Kaiser filed for bankruptcy. INA's position is that because the principal (Kaiser) breached its obligations to the claimants when it filed for bankruptcy, the date of bankruptcy is the date the government's claim arose. INA relies on a recent case from the Federal Circuit, *United States v. Cocoa Berkau,* 990 F.2d 610 (Fed.Cir.1993), to support its position. In *Cocoa Berkau,* the Federal Circuit held that "the surety incurs derivative liability when the principal breaches the bond", and thus the right of action on a bond arises at the time of the principal's breach. *Cocoa Berkau,* 990 F.2d at 614. INA urges the Court to find that the principal, Kaiser, breached the bond when it filed for bankruptcy on February 13, 1987. In that this case was not deemed filed until June 2, 1993[2], more than six years after Kaiser's bankruptcy, INA argues that the government missed the statute of limitations and the case should therefore be dismissed.

Count I. Defendant has moved for summary judgment as to both bonds.

2. The case was actually filed on December 30, 1993, but the date of filing was deemed to be June 2, 1993, pursuant to a tolling agreement reached by the parties.

In response, the United States argues that its right of action did not arise until July 8, 1987, the date on which INA refused the government's demand to pay the claims. The government argues that the bond in question is a "demand" bond and as such, a demand for payment is a prerequisite for an action on the bond. According to the government, INA was under no duty to pay on the bonds until the United States made its demand. Thus, the government argues that the bond in this case differs from the bond at issue in the *Cocoa Berkau* case, which, as the Federal Circuit noted, did *not* contain a demand clause. *Cocoa Berkau*, 990 F.2d at 613–14.

The government bolsters its argument by pointing to language in paragraph three of the bond agreement. Paragraph three reads, in part:

> If the said Principal shall be in default (as defined in the Federal Coal Mine Health and Safety Act of 1969, as amended, and the applicable regulations), whether such default be due to bankruptcy, insolvency, or whatever cause or reasons, *then the Secretary of Labor shall make a written demand upon the Surety to pay* such sums as the said Secretary shall deem necessary to discharge or to secure all or any of the obligations described in this bond. (Emphasis added)

The government interprets the bond as requiring the government to make a demand for payment in case of default of the principal as a prerequisite to perfecting a cause of action against the surety.

INA offers a different interpretation of paragraph three. INA argues that a demand for payment is merely a *procedural* option for the government, not a prerequisite to determining the surety's breach. In INA's view, the bond contains no language *requiring* a demand as condition precedent to determining whether a breach has occurred. INA further points out a concern raised by the Federal Circuit in *Cocoa Berkau*, that to require a government demand in order to trigger the statute of limitations

allows the government to manipulate the statute of limitations.

While the Court is troubled by the notion of the government being able to manipulate the statute of limitations through the timing of its demand on a bond, the fact remains here that until such a demand is made, the surety has no active obligation to pay on the bond. As such, it is only logical that the statute of limitations should be linked to a demand to pay on the bond. Such an interpretation does not operate to the detriment of the surety, since it is under no obligation to pay until it is so notified by the government. Moreover, "a party is not at liberty to stave off operation of the statute inordinately by failing to make demand; when statutorily unstipulated, the time for demand is ordinarily a reasonable time." *Nyhus v. Travel Mgmt. Corp.*, 466 F.2d 440, 452–53 (D.C.Cir. 1972). Here, the government made its demand on INA within four months of Kaiser's filing for bankruptcy. The demand was clearly made within a reasonable time.

The Court is persuaded that the plain language of paragraph three of the bond requires the government to make a written demand for payment to the surety in order to trigger the surety's obligation to pay on the bond. Indeed, the language of the bond could hardly be more clear: "*Then* the Secretary of Labor *shall* make a written demand upon the Surety to pay" (emphasis added). Paragraph one of the bond offers additional support for this interpretation, in that it gives the Secretary of Labor discretion over whether and when to pursue payment: "[The] Secretary in his discretion shall determine when recourse to suit shall be necessary in order to secure prompt payment."

Because "a demand is necessary to perfect [the] cause of action, the statute of limitations does not commence to run until the demand is made." *Nyhus v. Travel Mgmt. Corp.*, 466 F.2d 440, 452 (D.C.Cir.1972); *United States v. Rollinson*, 629 F.Supp. 581 (D.D.C.1986). Accordingly, the statute of limitations began to run on June 3, 1987, the date on which the Secretary of Labor made its demand to INA.[3] Because the parties

---

3. The government has argued that the appropriate date for statute of limitations purposes is July 8, 1987, the date on which INA refused the government's demand. However, this Court

entered into a tolling agreement which deemed the government's suit filed as of June 2, 1993, the government has met the statute of limitations with respect to Count I of its complaint. Defendant INA's motion for summary judgment as to the statute of limitations is accordingly DENIED.

On the other hand, in light of the Court's ruling that a demand on the bond is necessary to perfect the cause of action, the government has failed to fulfill this prerequisite with respect to Bond number M853072, which is the subject of Count II of the government's claim. The government admits that no demand was filed on that bond; the government instead elected to file this lawsuit. Consequently Count II is not yet ripe for judicial review and shall be dismissed without prejudice.

### B. The Scope of INA's Liability on the Bond

Also pending before the Court are cross-motions for summary judgment concerning the scope of INA's liability under the bond described in Count I of the government's complaint.[4] This is a case of first impression.

Essentially, this case calls for an interpretation of the language of the indemnity bond in question. The relevant language in the bond appears in paragraphs two and four. Paragraph two reads:

Regardless of the number of years this bond shall continue in force, the aggregate accumulated liability of the Surety under this bond shall in no event exceed the penal sum named herein for any and all claims which may accrue during the term hereof, and is otherwise limited to any and all present, past, and potential liability arising under the Federal Coal Mine Health and Safety Act of 1969, as amended from time to time, and the applicable regulations, for and on account of total disability or death due to pneumoconiosis or death

occurring while totally disabled by pneumoconiosis which attaches to or is accrued by the Principal in or for the period during which this bond is in force.

The relevant section of paragraph four reads:

[T]he Surety shall be liable for the default, insolvency, or bankruptcy of the Principal in fully discharging all past, present existing and potential liability of said Principal as self-insurer which may be or has been determined by the Secretary of Labor to have attached, accrued, or been incurred during the bond period.

The government interprets the bond in question to mean that INA is liable for payment of benefits to all claimants to whom Kaiser was liable at any point while the bond was in effect, limited only by the face value of the bond. Thus, according to the government, INA's liability mirrors Kaiser's liability during the pendency of the bond in question, meaning that insofar as Kaiser was liable for payments (including payment to claimants whose claims arose prior to the bond going into effect), INA would also be liable for these claims. In other words, the government's position is that INA's liability is limited only as to individuals *not yet employed* by Kaiser by the date the bond was terminated on May 20, 1984; INA's liability is capped by the total value of the bond ($3.3 million). Under the government's interpretation, INA would be responsible for benefit payments to approximately 37 miners.

The government argues that the terms "present, past, and potential liability", which appear twice in the bond, clearly establish INA's liability for claims which arose prior to the term of the bond. In addition, the government points to regulations issued by the Secretary of Labor to implement this section of the Coal Act, which state that the amount of security required to become a self-insured operator under the Coal Act shall be the amount "deem[ed] to be necessary and suffi-

---

agrees with the D.C. Circuit that the date of demand is the controlling date for statute of limitations purposes. On the date of demand, the government knew that it was commencing action against the surety for recovery on the bond. As such, the demand date is the appropriate date for determining when the right of action accrued and the statute of limitations was triggered.

4. As previously stated, bond number K01386670, valued at $3,304,000, was issued on May 1, 1982 and was cancelled effective May 20, 1984.

cient to secure the performance by the applicant of *all obligations* imposed upon him as an operator." 20 C.F.R. § 726.105. (Emphasis added). The government argues that the term *"all obligations"* includes all claims, including claims that attached to Kaiser prior to the effective date of the bond.

INA reaches a different conclusion as to the proper interpretation of paragraph 2. INA takes the position that it was only obligated to pay on claims for those individuals who were employed by Kaiser at some point between May 1982 and May 1984 (the period during which the bond was in effect). Under INA's interpretation, INA would be responsible for benefit payments to an estimated four miners. INA's argument hinges on the meaning of the word "accrue", which appears several times in the bond, and which INA interprets to exclude those claims that were filed and subject to a final determination prior to the effective date of the bond. Thus, in INA's view, only claims filed *after* the effective date of the bond can be found to have "accrued" during the bond period.

INA supports its position by noting that the bond obligations center around an employer's obligations under the Coal Act. That Act limits an employer's liability to those individuals for whom the employer is found to be the "responsible operator", meaning that the claimant must have worked for the employer for at least one year. In INA's view, individuals for whom Kaiser was not found to be the "responsible operator" during the period of the bond fall outside INA's liability.[5]

While the question presented is a close one, the Court is persuaded that, on balance, the government's interpretation of the bond is the correct one. The language of the bond with respect to liability is broad; indeed, one can hardly imagine drafting broader language. The multiple references in a spare two-page indemnity bond to past, present, and future liability leave little question that

INA's liability is not as limited as INA argues.

The Court is hard-pressed to find an interpretation of the bond which gives meaning to the term "past" liability, which appears twice in the bond, without holding INA liable for claims filed prior to the effective date of the bond. Furthermore, the bond language refers to liability which *attaches to* or is accrued *in or for* the period of the bond in question. These references to liability which "attaches ... for" the bond period suggest to the Court that this language refers to liability already in existence on the first day of the bond.

The language of the bond, when coupled with the Secretary of Labor's regulations requiring a bond amount sufficient to satisfy *all* obligations of the principal, persuades the Court that when INA issued the bond in question, it assumed liability for all Kaiser's obligations existing as of the effective date and continuing until the termination of the bond.[6] Accordingly, plaintiff's motion for summary judgment as to liability on Count I is GRANTED.

### C. *Amount of Damages*

Still remaining is the issue of what amount the government is entitled to collect from INA on the bond. The government has asked for the full penal sum, $3,304,000, claiming that the entire amount is needed to cover the cost of lifetime benefits to the 37 individuals identified by the government as covered by the bond in question. The government also seeks a 10 percent surcharge under 28 U.S.C. § 3011, and interest.

INA has disputed the United States' claim for the full penal sum and has objected to evidence utilized by the government in supporting its claim for the full penal sum. INA's objections are reflected in two motions to strike currently pending before this Court.[7]

---

**5.** INA conceded at oral argument that its liability would include claims filed after the cancellation of the bond by miners employed during the bond period.

**6.** The Court notes that INA's liability is not without limit—INA cannot be required to pay more than the face value of the bond.

**7.** Disposition of these motions is not required for purposes of the ruling made this day. The mo-

The Court is not persuaded on the basis of the current record that the government has demonstrated its entitlement to the full penal sum. Indeed, it is not clear from the current record what sums the government has paid out to claimants for whom INA is responsible. Nor is it clear from the current record what expectation, if any, the parties have as to Kaiser's ability to resume payments to claimants at any time in the future.

Because the amount of damages cannot be determined with precision at this point, the issue of damages must be reserved until a later date. The Court strongly encourages the parties to attempt to resolve the issue of damages promptly and to notify the Court should a settlement on damages be reached. Failing resolution by the parties, the government shall file its brief on the amount of damages to which it believes it is entitled on or before October 28, 1994; INA's opposition shall be filed on or before November 15, 1994; the government's reply, if any, shall be filed on or before November 23, 1994.

### III. *Conclusion*

For the reasons expressed above, it is hereby

ORDERED that plaintiff's motion for summary judgment as to defendant's *liability* on Count I is granted; it is

FURTHER ORDERED that plaintiff's motion for summary judgment as to damages is deferred for later consideration; it is

FURTHER ORDERED that Count II of the complaint is dismissed without prejudice as not yet ripe; and it is

FURTHER ORDERED that defendant's motion for summary judgment is denied.

IT IS SO ORDERED.

### *JUDGMENT*

On October 12, 1994, this Court issued a Memorandum Opinion and Order granting summary judgment as to liability in favor of plaintiff United States of America. On November 29, 1994, this Court issued an Order on the issue of damages, and directed plaintiff to submit a statement of damages and proposed judgment to the Court. On Janu-

ary 17, 1995, the Court issued an Order concerning, *inter alia*, plaintiff's entitlement to pre-judgment interest. On January 31, 1995, plaintiff received a distribution as partial payment on its claim in the Kaiser Steel/Coal Corporation bankruptcies, and it requested an extension of time in which to file an amended proposed judgment to reflect that payment. The amended proposed judgment was submitted to the Court on March 9, 1995.

Accordingly, judgment is hereby entered against defendant, Insurance Company of North America, and in favor of plaintiff, the United States of America, in the amount of six hundred fifty nine thousand eight hundred seventy one dollars and eighty cents ($659,871.80), plus interest from the date of judgment, representing the principal and interest for which defendant Insurance Company of North America is liable on Bond No. K01386670.

IT IS FURTHER ORDERED that defendant Insurance Company of North America is liable for future black lung benefits that become due on claims already filed or filed in the future arising from employment with Kaiser Steel Corporation occurring on or before May 20, 1984, but this liability is capped by the $3,304,000 penal sum of the bond.

IT IS FURTHER ORDERED that in the event the United States Department of Labor receives a distribution from the Kaiser Steel/Coal Corporation bankruptcies after the date of this judgment, that payment shall first be applied to accrued interest and principal due and owing on those federal black lung claims for which Kaiser Steel Corporation is liable that are not covered by the bond, and the remaining amount of the payment, if any, shall be applied to accrued interest and then principal due and owing on covered claims.

IT IS SO ORDERED.

tions will be deferred for consideration at a later time, if necessary.