UNITED STATES of America, Appellee,

v.

**INSURANCE COMPANY OF NORTH AMERICA, Appellant.**

No. 95–5113.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 1, 1996.

Decided May 21, 1996.

As Amended June 19, 1996.

---

Richard A. Bunn, argued the cause, for appellant. William J. Virgulak, Jr., Fairfax, VA, entered an appearance.

John G. Interrante, Attorney, United States Department of Justice, Washington, DC, argued the cause, for appellee. Frank W. Hunger, Assistant Attorney General, Eric H. Holder, Jr., United States Attorney, and James C. Kohn, Attorney, United States Department of Justice, were on brief, for appellee.

Before: HENDERSON, RANDOLPH and TATEL, Circuit Judges.

Opinion for the court filed by Circuit Judge HENDERSON.

KAREN LeCRAFT HENDERSON, Circuit Judge:

Insurance Company of North America (INA) appeals a summary judgment holding it liable under a 1982 indemnity bond (1982 bond) for claims filed against Kaiser Steel Corporation (Kaiser), a self-insuring coal mine operator now in bankruptcy. *See United States v. Insurance Co. of N. Am.*, 881 F.Supp. 1 (D.D.C.1995). INA challenges the district court's holdings that (1) the government's claim under the 1982 bond was timely because the cause of action thereunder did not accrue, and therefore the six-year statute of limitations did not commence, until the government made a written demand for payment of benefits and (2) INA is responsible under the bond for all of Kaiser's unpaid liability under the Black Lung Benefits Act, 30 U.S.C. § 901, (Act) (formerly part of the Federal Coal Mine Health and Safety Act of 1969) including that which Kaiser accrued before the bond's effective date. For the reasons set out below, we affirm the district court's ruling on the statute of limitations but reverse on the scope of INA's liability, concluding it extends only to liability that was accrued by Kaiser, under the Department's "responsible operator" regulations, while the 1982 bond was in force, that is claims filed on behalf of individuals whose last continuous mining employment of at least one year was

by Kaiser and who completed that year of employment between May 1, 1982 and May 20, 1984.

Congress enacted the Act to compensate mining employees who suffer from occupational pneumoconiosis or "black lung." 30 U.S.C. § 901. Under the Act, as administered by the Department of Labor (Department), an eligible claimant's benefits are to be paid by the "responsible operator," that is "the operator or other employer with which the miner had the most recent periods of cumulative employment of not less than 1 year." Each operator is required to secure payment of benefits in advance by acquiring a third-party insurance policy or by qualifying as a self-insurer. 30 U.S.C. §§ 932, 933(a). A self-insuring coal mine operator must deposit with the Department "security in the form of either an indemnity bond or negotiable securities." 20 C.F.R. § 726.101. Benefits not paid by a responsible operator (or its surety) are disbursed from the Black Lung Disability Trust Fund (Fund), which is jointly administered by the Secretaries of the Treasury, Labor and Health and Human Services. 30 U.S.C. § 934; 26 U.S.C. § 9501. The Department then seeks reimbursement from the responsible party, if any. 30 U.S.C. § 934.

In 1973 the Department authorized Kaiser to act as a self-insured coal mine operator. Kaiser initially procured an indemnity bond from INA in the amount of $684,750, effective November 2, 1973 (1973 bond). Kaiser subsequently procured the 1982 bond in the amount of $3,304,000 and with an effective date of May 1, 1982.[1] The 1982 bond was canceled on May 20, 1984.[2]

In February 1987 Kaiser filed for bankruptcy and stopped paying regular benefits to claimants. By letter dated June 3, 1987, the Department informed INA of Kaiser's bankruptcy, asserted that the 1982 bond "cover[ed] liability for claims filed from July 1, 1973, to May 20, 1984" and "requested"

INA "to make arrangement for payment of benefits that are the obligation of Kaiser Coal Company." JA 15. In a letter dated July 9, 1987, INA agreed to begin processing two claims that "arguably can fall within the coverage of INA's bond" but "decline[d] coverage" for any other claims on the ground they had not "attached or accrued during the period during which the bond was in force," namely May 1, 1982 to May 20, 1984. JA 16–17. The Department then arranged for payment of the denied claims from the Fund.

On May 14, 1993 the Department again wrote INA, this time demanding payment of the full bond amount in satisfaction of all past and future claims against Kaiser, which the Department estimated to exceed the bond amount. While conducting settlement discussions, INA and the government agreed to toll the limitations period for the 1982 bond as of June 2, 1993. When the discussions proved fruitless, the government filed this action on December 30, 1993, seeking reimbursement under both the 1973 bond and the 1982 bond.

On October 12, 1994, the district court dismissed without prejudice the government claim on the 1973 bond claim and in the government's favor on the 1982 bond claim. The court found the former claim not yet ripe for judicial review because the government admitted no demand had been made on the 1973 bond but concluded that the 1982 bond claim was timely and that the bond's broad language made INA liable "for all Kaiser's obligations existing as of the effective date and continuing until the termination of the bond." 881 F.Supp. at 5. Accordingly, on March 24, 1995 the court entered judgment against INA in the amount of $659,871.80, reflecting the unreimbursed benefits already disbursed from the Fund to Kaiser claimants, and declared INA liable for all future benefits due on claims for which Kaiser became liable before the 1982 bond's

---

1. During the interim Kaiser's liability was covered by an indemnity bond issued by The American Insurance Company in the amount of $3,304,000 that was in effect from May 1, 1981 until its cancellation on July 16, 1982. The record does not disclose whether the government ever sought reimbursement under this bond.

2. It is unclear from the record whether the 1973 bond was ever canceled. See 881 F.Supp. at 1 n. 1.

cancellation date of May 20, 1984, subject to the bond's monetary cap of $3,304,000. INA now appeals the judgment on two grounds.[3]

## I.

■ INA first asserts the government's 1982 bond claim is barred under the applicable six-year statute of limitations in 28 U.S.C. § 2415(a)[4] because the cause of action on the bond accrued in February 1987 when Kaiser defaulted on its obligation to pay benefits by filing for bankruptcy—more than six years before the limitations period was tolled on June 2, 1993. The government maintains that its cause of action did not accrue until June 3, 1987 when it first made a written demand of INA for payment and that, taking into account the parties' tolling agreement, the action was filed within the required period. The district court agreed with the government and we do as well.

Whether a demand was required to trigger the statute of limitations depends on the terms of the bond. If it "envisions an actual demand, the statute of limitations is set in motion only by such a demand." *Nyhus v. Travel Management Corp.*, 466 F.2d 440, 453 (D.C.Cir.1972). The language of the 1982 bond makes INA's surety obligation "subject

... to" six "express conditions," including the following:

> 3. If the said Principal shall be in default (as defined in the Federal Coal Mine Health and Safety Act of 1969, as amended, and the applicable regulations), whether such default be due to bankruptcy, insolvency, or whatever cause or reasons, then the Secretary of Labor *shall make a written demand* upon the Surety to pay such sums as the said Secretary shall deem necessary to discharge or to secure all or any of the obligations described in this bond.

JA 12 (emphasis added). That the surety's liability is "express[ly] condition[ed]" upon the government's written demand and that such demand is made mandatory by the modal "shall"[5] demonstrates that the demand is a prerequisite to liability and therefore to the running of the statute of limitations. *See* 466 F.2d at 452–53 ("Where a demand is necessary to perfect a cause of action, the statute of limitations does not commence to run until the demand is made.... Where, on the other hand, a call for performance is not an essential element of the cause of action, the running of the statute does not await a demand.") (footnotes omitted).[6]

---

**3.** Neither party appealed the court's ruling that the 1973 bond claim was not yet ripe for judicial review.

**4.** This section provides in relevant part:
Subject to the provisions of section 2416 of this title, and except as otherwise provided by Congress, every action for money damages brought by the United States or an officer or agency thereof which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues or within one year after final decisions have been rendered in applicable administrative proceedings required by contract or by law, whichever is later: Provided, That in the event of later partial payment or written acknowledgment of debt, the right of action shall be deemed to accrue again at the time of each such payment or acknowledgment.
28 U.S.C. § 2415(a).

**5.** Cases are legion affirming the mandatory character of "shall." *See, e.g., United States v. Monsanto,* 491 U.S. 600, 607, 109 S.Ct. 2657, 2662, 105 L.Ed.2d 512 (1989); *Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 61, 103 S.Ct. 400, 403–04, 74 L.Ed.2d 225 (1982) (per curiam); *Anderson v. Yungkau,* 329 U.S. 482, 485, 67 S.Ct. 428, 430, 91 L.Ed. 436 (1947); *Associa-*

*tion of Civilian Technicians v. FLRA,* 22 F.3d 1150, 1153 (D.C.Cir.1994). Yet this "overworked auxiliary" should convey no greater force than the more contemporary future modal "will." *See* Bryan A. Garner, *A Dictionary of Modern Legal Usage* 502 (1987). In recent times, pedants have, without logical or philological basis, reserved "shall" for use with the first person, while assigning "will" to the second and third. *See id.* The two words' ancestors, however, were distinct verbs, different both in meaning and conjugation. *See* F.G. Cassidy & Richard N. Ringler, *Bright's Old English Grammar* 464 & 488 (3d ed. 1971) (entries for Anglo–Saxon *sculan* and *willan* ).

**6.** In arguing contrariwise, INA relies heavily on a recent Federal Circuit decision holding that a bond surety's liability—and the limitations period—began as of default and not as of demand. *See United States v. Cocoa Berkau,* 990 F.2d 610 (Fed.Cir.1993). In that opinion, however, the court recognized that an agreement *can* create a demand prerequisite, as it did here, *id.* at 614 ("*Absent an agreement between the parties,* the surety incurs derivative liability when the principal breaches the· bond.") (emphasis added), but found the bond language there did not, *id.* at 613–14. INA also contends that the government

Accordingly, we affirm the district's ruling that the government's claim under the 1982 bond is not time-barred.

## II.

■ Next, INA challenges the district court's holding on the scope of the surety's liability under the 1982 bond. The 1982 bond states in relevant part:

2. Regardless of the number of years this bond shall continue in force, *the aggregate accumulated liability* of the Surety under this bond shall in no event exceed the penal sum named herein for any and all claims which may accrue during the term hereof, and *is otherwise limited to any and all present, past, and potential liability* arising under the Federal Coal Mine Health and Safety Act of 1969, as amended from time to time, and the applicable regulations, for and on account of total disability or death due to pneumoconiosis or death occurring while totally disabled by pneumoconiosis *which attaches to or is accrued by the Principal in or for the period during which this bond is in force.*

. . .

4. . . . [T]he Surety shall be liable for the default, insolvency, or bankruptcy of the Principal in fully discharging all past, present existing and potential liability of said Principal as self-insurer which may be or has been determined by the Secretary of Labor to have attached, accrued, or been incurred during the bond period.

JA 12 (emphasis added). INA maintains that the highlighted language limits its liability under the 1982 bond to claims filed by employees to whom Kaiser first became liable while the 1982 bond was in effect. The district court rejected INA's interpretation and adopted the government's position that "when INA issued the bond in question, it assumed liability for all Kaiser's obligations existing as of the effective date and continuing until the termination of the bond." 881 F.Supp. at 5. The court based its conclusion on the bond's "broad" language and, in particular, on "the multiple references in a spare two-page indemnity bond to past, present, and future liability," which "leave little question that INA's liability is not as limited as INA argues." *Id.* We reject the district court's construction, which virtually deletes the highlighted limitation from the bond document, and hold that INA's liability under the bond's language is limited to that which "*attache[d] to or [was] accrued by*" Kaiser while the bond was in effect because Kaiser became the "responsible operator" under 20 C.F.R. § 725.493 during that period.[7]

We begin with the "cardinal principle of contract construction: that a document should be read to give effect to all its provisions and to render them consistent with each other." *Mastrobuono v. Shearson Lehman Hutton, Inc.*, —— U.S. ——, ——, 115 S.Ct. 1212, 1219, 131 L.Ed.2d 76 (1995); *see also Systemized of New England, Inc. v. SCM, Inc.*, 732 F.2d 1030, 1034 (1st Cir.

"judicially admitted"—in court filings—that a demand was not a condition precedent to a right of action on the bonds. Judicial admissions, however, must be deliberate, express and unequivocal, *see Oscanyan v. Arms*, 103 U.S. (13 Otto) 261, 263–64, 26 L.Ed. 539 (1880); *In re Corland Corp. (Stephenson v. Salisbury)*, 967 F.2d 1069, 1074 (5th Cir.1992), and are limited to questions of fact, *see Schott Motorcycle Supply, Inc. v. American Honda Motor Co.*, 976 F.2d 58, 61 (1st Cir.1992). Neither condition is met here. INA further argues that Kaiser's bankruptcy petition accelerated Kaiser's black lung obligations and caused the statute of limitations to begin to run on February 13, 1987. In the absence of a provision explicitly providing for the automatic acceleration of claims upon bankruptcy, the accrual of Kaiser's claims remained subject to the demand requirement. *See, e.g., United States v.*

*Vanornum*, 912 F.2d 1023, 1026–27 (8th Cir. 1990).

7. We do not read the phrases "attaches to" and "is accrued by," or the subsequent "is incurred by," as semantically distinct in this context. The two phrases are used interchangeably throughout the bond document as they generally are in court opinions as well, at least when applied to liability. *See, e.g., In re Midland Indus. Serv. Corp.*, 35 F.3d 164, 166 (5th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1359, 131 L.Ed.2d 216 (1995); *Melton v. City of Oklahoma City*, 879 F.2d 706, 723, 732 n. 40 (10th Cir.1989), *rev'd in part, Melton v. City of Oklahoma City*, 928 F.2d 920 (10th Cir.1991) (*en banc*); *Molton v. City of Cleveland*, 839 F.2d 240, 243, 247 (6th Cir.1988), *cert. denied*, 489 U.S. 1068, 109 S.Ct. 1345, 103 L.Ed.2d 814 (1989).

1984); *Estate of Waters v. CIR,* 48 F.3d 838, 844 (4th Cir.1995); *Fireman's Fund Ins. Co. v. Murchison,* 937 F.2d 204, 207 (5th Cir. 1991); *Fortec Constructors v. United States,* 760 F.2d 1288, 1292 (Fed.Cir.1985). Applying this principle here, we must, if possible, give some meaning to the highlighted temporal limitation and harmonize it with the bond's other language. We believe we can.

The district court found the scope of liability issue a "close one" but was apparently swayed to the government's view by two terms in the bond. First, the court found itself "hard-pressed to find an interpretation of the bond which gives meaning to the term 'past' liability, which appears twice in the bond, without holding INA liable for claims filed prior to the effective date of the bond." 881 F.Supp. at 5. We perceive no such difficulty. Condition 2 imposes limits—both financial and temporal—on *"the aggregate accumulated liability* of the Surety," which can only be determined once INA's indemnification obligation has been triggered and it has actually incurred liability. Such an accounting will normally occur only after the surety disputes some liability, as INA has here, based on one of the two limitations. At that point "past" liability simply means liability that INA has both incurred and discharged (and which therefore no longer exists), just as "present" liability is that which the surety has incurred but not yet discharged and "potential" liability is that which has not yet been incurred (and may never be). Here, for example, past liability is that which INA has already discharged by paying benefits.

Second, the district court concluded that "references to liability which 'attaches ... for' the bond period suggest to the Court that this language refers to liability already in existence on the first day of the bond," apparently construing the preposition "for" to mean "for the entire duration of." *Id.* While the court's construction might, in isolation, be a plausible one, it is at variance with other language in the bond that limits INA's liability to that which attaches *during* the bond's term. For example, the bond's financial cap is "for any and all claims *which may accrue during the term hereof."* JA 12 ¶ 2 (emphasis added). Similarly, condition 4 describes the surety's obligation as discharging the principal's liability "which may be or has been determined by the Secretary of Labor *to have attached, accrued, or been incurred during the bond period."* *Id.* ¶ 4. The inconsistency disappears if "for" is given either of two alternative meanings: "on account of" or "with respect to." *See* VI *Oxford English Dictionary* 26 (2d ed. 1989) (definitions 21, 26). Either meaning would harmonize the phrase "attaches ... for" with the rest of the bond's language and also make clear that the surety remains liable for claims filed after the bond is canceled so long as Kaiser became the "responsible operator" before cancellation. We therefore adopt this interpretation of condition 2 and conclude that the parties intended that each successive bond impose on the surety only liability accruing after the bond's effective date,[8] a scheme, we note, that is consistent with the government's position below that it was enti-

8. In reaching its conclusion on the scope of liability, the district court made passing reference to "the Secretary of Labor's regulations requiring a bond amount sufficient to satisfy *all* obligations of the principal." 881 F.Supp. at 5 (emphasis in original). It is true that section 726.105 of the Department's regulations provides: "The amount of security to be fixed and required by the Office [of Workmen's Compensation Programs] shall be such as the Office shall deem to be necessary and sufficient to secure the performance by the applicant of *all* obligations imposed upon him as an operator by the Act." 20 C.F.R. § 726.105 (emphasis added). The language appears, however, to govern the setting of the initial security amount when an employer first becomes a self-insurer (here $684,750) so that it will cover all obligations accruing thereafter. A few sentences later the same regulation provides separately for later changing the amount of security required "when experience or changed conditions so warrant." *See id.* It is at least reasonable to infer that this language, like the section's first sentence, was intended to ensure that the bond amount be set at a level sufficient to cover liability accruing in the future. Here, for example the 1981 and 1982 bond amounts may have been set at $3,304,000, more than four times the 1973 bond limit of $684,750, because the Department anticipated that amount was necessary to cover claims that would accrue in the future based on the level of costs incurred in the past.

tled to collect under both the 1973 and 1982 bonds.

For the preceding reasons, we hold that INA is liable under the 1982 bond only for claims for which Kaiser became the "responsible operator" under 20 C.F.R. § 725.493 between May 1, 1982, the bond's effective date, and May 20, 1984, the date it was canceled, by virtue of an employee's completion of one full year of employment with Kaiser during that period. Accordingly, we reverse the district court's liability holding and remand to that court to reassess damages in accordance with our holding.[9]

*So ordered.*

---

9. Our decision does not address the rights of eligible claimants to receive benefits due under the Act but only whether benefits owing are to be paid by INA or from the Fund.